THE MISSOURI PACIFIC RAILWAY COMPANY v. ELIZA M. MOFFATT *et al.*

No. 8334.

1. RAILROAD COMPANY—*Highway-Crossing Accident—Pleading —Enlarging Issues.* In an action against a railway company to recover damages for the killing of a person at a highway crossing, where there is no averment or proof that the speed of the train which struck the deceased was unlawful or negligent, the trial court is not justified in enlarging the issues and submitting to the jury the question of whether the company was guilty of negligence in running the train at a high rate of speed.

2. ——— *Duty as to Signals.* It is the duty of a railway company to give reasonable and proper warnings for the protection of travelers on the highway when its train approaches a crossing. The number and kind of signals required depend upon the character of the crossing, the speed of the train, and the surrounding circumstances.

3. ——— *Statute—Minimum of Care.* The statute which requires a railway company to give certain signals at highway crossings was not intended to furnish a standard by which to determine in every case whether or not such company had fully discharged its duty in respect to giving sufficient warnings to the traveling public of the approach of its train. It was intended rather to prescribe the minimum of care which must be observed in all cases. (*A. T. & S. F. Rld. Co. v. Hague,* 54 Kan. 284.)

4. ——— *Competent Evidence.* Where it is claimed that an intervening bluff along which a railway was built prevented a traveler approaching the crossing from hearing the ordinary sig-

nals, it is competent to show, by a witness who has made a test at the place of the injury and under substantially similar circumstances, how far the signals can be heard, and the effect of the intervening bluff in obscuring the vision and deadening the sounds made by a passing train.

5. EVIDENCE, *Positive and Negative—Relative Value.*    Where there is positive evidence that signals were given, and only negative testimony that they were not given, it is the duty of the court, upon request, to call the attention of the jury to the relative value of the two kinds of evidence. (*Mo. Pac. Rly. Co. v. Pierce*, 39 Kan. 391.)

*Error from Wyandotte District Court.*

ACTION by Eliza M. Moffatt and others against The Missouri Pacific Railway Company.    Judgment for plaintiffs.    Defendant brings the case to this court. The opinion herein, filed April 11, 1896, states the nature of the action and the material facts.

*B. P. Waggener, D. Martin*, and *J. W. Orr*, for plaintiff in error.

*James F. Mister, J. O. Fife*, and *Hutchings & Keplinger*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : On the morning of October 23, 1890, Andrew C. Moffatt was in a wagon driving a team of horses along a highway in Wyandotte county, and, at an intersection of the highway with the Missouri Pacific railway, he was struck and fatally injured by the locomotive of a passenger-train.    It was a regular train, which was about on time, running at the usual rate of speed, and the engineer and fireman in charge were in their proper places.    They had sounded the whistle for the crossing at a point 80 rods away, and about the same place the bell was rung, but it does not appear that the whistle was again sounded ; and

although those in charge of the train claim that the bell was rung continuously until the crossing was passed, that is a subject of dispute.   The crossing is in a rural district, and west of the railroad — the direction from which Moffatt was coming — there is a high hill which obscured the view of the train, and to some extent deadened the noise of its approach and the sound of any warnings that were given.   A dense fog prevailed on that morning, and the engineer did not see Moffatt going upon the track until the train was within 50 feet of the crossing ; and while those in charge of the train did everything in their power to stop and prevent injury to Moffatt, after they discovered him, he was struck, and within a few hours afterward he died from the resulting injuries.   He was a widower, and left six children, whose ages range from 14 to 22 years.   This action was brought by the children, who allege that they were living with their father, and were wholly dependent on him for their maintenance and support.

The issues upon the trial were, whether the railway company was guilty of negligence in failing to give sufficient warnings of the approach of the train to the crossing, and whether the deceased was guilty of contributory negligence.   The trial was with a jury, which found against the railway company, and awarded damages in favor of the plaintiffs in the sum of $8,000.

As Moffatt was a resident of Missouri at the time of his injury and death, the action was properly brought by his children, under section 422a of the civil code. The objections made to the validity of that provision of the code have been held to be unavailing.   (*Berry v. K. C. Ft. S. & M. Rld. Co.*, 52 Kan. 759.)

An attack was made upon the petition because of the indefiniteness of the averments respecting the neg-

ligence of the company. The allegations of the peti-
tion are sufficiently specific in stating that the fault
of the company was in approaching the crossing with
its engine and cars without giving any warning, and
without using the bell or blowing the whistle. It
contains some averments of a very general nature re-
lating to the dangerous character of the crossing, of
running the train at a high rate of speed, and of not
using some other and different methods than blowing
the whistle or ringing the bell for the protection of
those who might be upon the crossing. These gen-
eral averments are insufficient to justify the admission
of proof as to any negligence of the company beyond
the failure to give proper signals and due warning of
the approach of its train. If other acts of negligence
are relied on, they should have been distinctly set
forth; and, when the court denied the motion to
make the averments more definite and certain, no
other proof of negligence should have been received,
nor should any other grounds of recovery have been
submitted to the jury than those which were properly
pleaded. Although there was no averment or proof
that the speed of the train was unlawful or negligent,
the trial court enlarged the issues, and, by an instruc-
tion, submitted to the jury the question of whether
the company was guilty of negligence in running the
train at a very high rate of speed. The jury re-
sponded with a finding that 10 miles an hour was a
dangerous speed at such a place, and that the railroad
company was guilty of negligence by reason of run-
ning its train at a very high rate of speed while ap-
proaching the crossing. It was a passenger-train,
then running at a speed of from 30 to 32 miles an
hour, which was the usual speed of that train. The
crossing was in an open country, where there was no

statutory or municipal regulation with respect to the speed of trains. The demands of the public and the necessities of modern business require that such trains should be run at a rapid rate, and railroad companies would hardly be justified in slacking the speed at every such highway crossing to avoid the risk of a collision with some one who was passing over the same. Even if the rate of speed had been pleaded as a specific act of negligence, it could hardly be held, under the circumstances, that the speed at which the train in question was run was negligent or unlawful. The court, however, without justification, made the speed of the train an element of negligence, and the jury evidently made it a basis of recovery. In this there was error.

It was the duty of the railway company to give reasonable and proper warnings for the protection of travelers on the highway when its train approached the crossing. The number and kind of signals required depended upon the character of the crossing, the speed of the train, and the surrounding circumstances. It is earnestly argued that the statutory signals having been given, the company had discharged its full duty to the public and to Moffatt. Complaint is therefore made of an instruction in which it is stated that

"The statute which requires a railroad company to give certain signals at street crossings was not intended to furnish a standard by which to determine in every case whether or not such company had fully discharged its duty to prevent injury to the traveling public. It was intended, rather, to prescribe the minimum of care which must be observed in all cases."

Under ordinary circumstances, in the open country, the railroad company can run as many trains and at

as great a rate of speed as is consistent with the safety of its passengers. In such cases, it will ordinarily be sufficient to give the signals that are required by statute. Where, however, the crossing is a dangerous one, and where the road is constructed in such a way and place as to make it more than usually difficult to see the train or to hear the signals that are given, additional signals may be required. In this case, it appears that the railroad is constructed between the bluff and the river, and that the bluff intercepts the vision of travelers approaching from the west on the highway. The testimony tends to show that on a foggy morning, like the one when the injury occurred, the bluff so obstructs the transmission of sound that the statutory signals cannot be heard by a traveler approaching the crossing. The legislature did not undertake to prescribe the standard of care required in all cases. It is to be determined, rather, from the situation and circumstances surrounding it. It is the duty of the railroad company, when the statutory signals or warnings are insufficient, to give other and additional warnings, such as reasonable care and prudence would dictate under the circumstances of the particular case, and the question of negligence in such a case is for the jury to decide. The view urged by the company in this case was presented in *A. T. & S. F. Rld. Co. v. Hague*, 54 Kan. 284. It was there said : "We are unable to adopt the theory that the performance of the statutory requirements is the full measure of the company's duty toward the public at crossings. Circumstances may arise where the giving of other warnings or signals may be necessary and obligatory upon the company." Instances are there given where it is held that it would be reasonable and right to require additional warnings, so as to avoid injury to

persons or property that might be passing over the crossing. We do not determine that additional warnings were necessary in this case, but only that the situation and circumstances were such as to justify the instruction that was given and the submission of the question to the jury.

In an effort to show that the statutory signals were insufficient at the crossing in question, the testimony of a witness who stood on the highway near the crossing and listened for the signals and noises of several passing trains was received, over the objection of the company. We think the testimony was competent. It tended to show that, on account of the intervening bluff, a traveler approaching the crossing could not hear the signals given 80 rods away, and was of some value in the determination of the question of whether or not Moffatt could reasonably have heard the approach of the cars under the circumstances existing at the time and place where the casualty occurred. If the test is made at the place and under substantially similar circumstances, it is difficult to see how better proof upon that question can be obtained. The testimony might be weakened to some extent by reason of the differing conditions of the atmosphere when the test was made, but this would affect its weight rather than its competency. Testimony of a like character was received on behalf of the railway company, and the further testimony which it offered upon the question and which was excluded was of little, if any, value.

Although there was no testimony whatever as to the earnings of the deceased, the jury, in answer to a special question, found that his earnings per year were about $2,000. Findings were also made that previous to his death he had contributed to the support of the

43—56 KAS.

children; and, although several of them had reached majority, it is found, without testimony, that they derived their entire support from their father. One witness stated that the family were dependent upon the father for their support, but a further examination developed that he had no knowledge upon the question, and that the statement was a mere opinion which was not admissible in evidence. The unsupported findings bore directly upon the amount of damages to be awarded, and were therefore important.

The court erroneously refused to instruct the jury upon the relative value of positive and negative testimony. There was positive testimony offered by the company that the bell was rung continuously from the whistling-post to the crossing. In opposition to this there was the negative testimony of persons upon the train that they did not hear the ringing of the bell. In view of the condition of the testimony, the refusal of the court to give the instruction requested is contrary to the decisions of this court. (*K. C. Ft. S. & G. Rld. Co. v. Lane*, 33 Kan. 702; *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.*, 36 id. 121; *S. K. Rly. Co. v. Hinsdale*, 38 id. 507; *Mo. Pac. Rly. Co. v. Pierce*, 39 id. 391.)

For the errors mentioned the judgment will be reversed, and the cause remanded for a new trial.

ALLEN, J., concurring.

MARTIN, C. J., having been of counsel, did not sit.