Railroad Co. v. Brock.

THE ST. LOUIS & SAN FRANCISCO RAILROAD COM-
PANY v. J. T. BROCK.

No. 13,627.   (77 Pac. 86.)

SYLLABUS BY THE COURT.

1. CONTRIBUTORY NEGLIGENCE — *Choice of Ways at Traveler's
Risk — Exception Stated.* There is a general rule that when
two ways are open to a person, one of which is obviously safe and
the other plainly dangerous, and he voluntarily chooses the latter,
he will ordinarily do so at his peril; but if one be placed in peril
by the negligence of another and through consequent fear and be-
wilderment err in judgment and make an injudicious choice of a
means of escape, contributory negligence cannot be ascribed to
him as a matter of law.

2. RAILROADS — *Injury at Crossing — Value of Positive and Nega-
tive Evidence of Whistling at Crossing Distinguished.* In
weighing conflicting evidence of whether the whistle of a locomo-
tive approaching a crossing was sounded, the law gives a prefer-
ence to positive over negative evidence, and where there is positive
testimony by those in charge of the train that the whistle was
sounded, and negative testimony of those within hearing that they
did not hear it, the court should, upon request, call the attention
of the jury to the relative value of the two classes of testimony.

Error from Montgomery district court; THOMAS J.
FLANNELLY, judge. Opinion filed June 11, 1904. Re-
versed.

*Pratt, Dana & Black, L. F. Parker,* and *Thomas H.
Stanford,* for plaintiff in error.

*A. B. Clark,* and *J. D. Brown,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : J. T. Brock recovered a judgment
against the St. Louis & San Francisco Railroad Com-
pany for $7000, for personal injuries sustained because
of the alleged negligence of the company. In his pe-
tition he averred that, in traveling over a highway
with which he was unfamiliar, it became necessary

Railroad Co. v. Brock.

for him to cross the railroad track; that east of the crossing the railroad runs through a deep cut, and that, in the same direction and near the crossing, there is a curve in the railroad; that the embankments around the curve and along the cut are high,. and on the embankments grass, weeds and brush were negligently permitted to grow and stand so as greatly to obstruct the view of one approaching the track; that, as he approached the crossing, cautiously checking his team to a walk, he looked and listened for a coming train, but heard and saw none, or any signals indicating that one was approaching, and when his horses were upon the track a locomotive and train came around the curve and out of the cut, running at a high rate of speed, without having given a signal or warning of any kind. To save himself he whipped up his horses and they sprang forward, clearing the track, and avoiding a collision with the locomotive, but when the wheels struck the rails of the track he was first thrown forward on the dashboard of the buggy and then backward against the seat, wrenching and injuring himself severely, shattering his nervous system, impairing the action of his heart, and causing great pain and injury to his head, neck, and spinal column. The negligence charged was the failure of the company to sound the whistle eighty rods east of the crossing, or to give any signals in coming up to the crossing through the cut and around the curve, and, further, that there was negligence in allowing the grass, weeds and brush to grow along the track so as to conceal a coming train or a traveler approaching the crossing.

The first trial resulted in a verdict and judgment against the company for $400, but the judgment was reversed for error in the instructions. (*Railroad Co. v.*

29—69 KAN.

*Brock*, 64 Kan. 90, 67 Pac. 538.) At the second trial the jury awarded Brock damages in the sum of $7000, and a great number of the rulings then made are challenged.

It is now contended that the averments of the petition, as well as the plaintiff's evidence, show that Brock recklessly ran a race with the locomotive and was injured, when he might have avoided danger if he had backed or turned his team off the track, or had jumped from the buggy when he first saw the approaching train. There is a general rule that when two ways are open to a person, one of which is obviously safe and the other plainly dangerous, and he voluntarily chooses the latter, he will ordinarily do so at his peril. This rule has its exceptions, as, for instance, if a person be placed in peril through the negligence of another, and through consequent fear and bewilderment err in judgment and make an injudicious choice of a means of escape, contributory negligence cannot be ascribed to him as a matter of law. In such case the party who put him in peril may be said to have caused the error in judgment as well, and the question of whether he acted with reasonable care under the circumstances is generally one for the jury. Who can say that it would have been a wiser course for Brock to attempt to back or pull his team off the track after seeing the locomotive, which he said was only about 200 feet away when he first discovered it? His team was then upon the track moving forward, and who can say there would not have been greater risk in checking the team and backing or pulling them off than in proceeding in the direction in which they were already moving? By striking the horses and urging them forward he did, clear the track and avoid a collision. A greater dis-

aster might have resulted if he had chosen the other course.

A person of ordinary prudence is not expected to act with the same presence of mind and care under the stress of sudden and impending danger as he would under other conditions, and whether Brock exercised reasonable care under the circumstances was peculiarly a question for the jury. Whether he should have stopped, as well as looked and listened for a train, when he approached the crossing, was, as determined on the first review, properly submitted to the jury. (*Railroad Co. v. Brock*, supra.) In that proceeding the sufficiency of the petition was determined in his favor, and the testimony offered in support of his claim was held to have made a *prima facie* case for his recovery.

There is complaint of the rulings made in charging the jury. The case appears to have been fairly submitted, except in one particular. Requests were made for instructions as to the difference in the force and weight of positive and negative testimony, but all of them were refused. There was conflicting testimony, as is usual in cases of this kind, in regard to the blowing of the whistle for the crossing. Those in charge of the train testified positively that the whistle was sounded, while the defendant's witnesses testified that they did not hear it. The failure to blow the whistle, or to give any signal of the approach, was the principal ground of negligence charged against the railroad company, and, hence, the weight to be given to the different kinds of conflicting testimony with respect to the matter was very important. In cases of this character the courts have deemed it necessary pointedly to call the attention of the jury to the difference between positive and nega-

tive evidence. In *Mo. Pac. Rly. Co. v. Pierce*, 39 Kan. 391, 18 Pac. 305, a case like this one, the refusal to give an instruction pointing out the distinction was made the ground for a reversal of the judgment. The circumstances of the two cases were similar, and the instruction requested and refused in this case is almost a literal copy of the one which, it was held in the preceding case, was erroneously refused. In *Mo. Pac. Rly. Co. v. Moffatt*, 56 Kan. 667, 44 Pac. 607, it was held that, where there is positive testimony that signals were given and negative testimony that they were not given, it is the duty of the court, upon request, to call the attention of the jury to the relative value of the two classes of testimony. (See, also, *K. C. Ft. S. & G. Rld. Co. v. Lane*, 33 Kan. 702, 7 Pac. 587; *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.*, 36 id. 121, 12 Pac. 593; *S. K. Rly. Co. v. Hinsdale*, 38 id. 507, 16 Pac. 937.) Of course, if the witnesses had equal opportunities to hear, were giving like attention to the sound of the whistle, and were equally positive in their statements as to whether it was sounded, there would be little room for the application of the rule. This court so said in the case of *K. C. Ft. S. & G. Rld. Co. v. Lane*, supra:

"The testimony of one who was in a position to hear, and who was giving special attention to the sounding of the whistle, that it was not sounded, while negative in form, is a positive statement of fact, and where the witnesses had equal opportunity to hear the whistle, and are equally credible, it is generally of as much value as the testimony of one who states that it was sounded."

Perhaps the testimony of Brock, who declares that he was giving heed for signals, may belong to this class, but some of the testimony in his behalf clearly

comes within the rule of *Mo. Pac. Rly. Co. v. Pierce,* supra, and, hence, the instruction should have been given. For this error the judgment must be reversed, and the cause remanded for a new trial.

All the Justices concurring.