BENSON, J., not sitting.

---

BEN JOHNSON, *as Administrator, etc.*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY.

No. 15,770.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES — *Contributory Negligence of a Traveler at a Crossing.* Upon a review of the evidence it is held that the question whether the deceased person for whose death damages are sought was chargeable with contributory negligence was one of fact for the jury.

2. ———— *Evidence—Tests of Hearing or Sight.* The rule stated in *Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667 (par. 4 of syllabus), and in *Railway Co. v. Townsend,* 71 Kan. 524, relative to the admissibility of the evidence afforded by tests made by witnesses of the effect of an intervening bluff in deadening the sound made by an approaching train, is held to be applicable to such testimony relating to the effect of the embankments of a cut through which a railroad track extended in preventing a view of the smoke or steam from an engine approaching through such cut.

Error from Wabaunsee district court; ROBERT C. HEIZER, judge. Opinion on rehearing, filed July 3, 1909. Reversed. (First opinion not reported.)

STATEMENT.

THIS was an action to recover damages for the death of Christian Anderson at a railroad-crossing at Alta Vista, caused by the alleged negligence of the defendant.

Entering Alta Vista from the southwest, through a deep cut, the defendant's track reaches the surface level one-fourth of a mile from the station. At or near the station it extends in a northeasterly direction through another cut, which is fifteen feet deep at the highest point of the hill. The cut emerges to the level at a point fifty feet southwest of the crossing where Mr. Anderson was killed. The hill slopes from its greatest elevation for 250 feet toward the northeast, down to this point. The crossing is 1200 feet from the station. A ditch running through the cut thirty-six feet east and south of the east rail of the track passes under a culvert in the east-and-west road leading to the railroad-crossing in question. From this crossing to the station, and for a quarter to a half mile beyond, the track is straight. A road leading north from Alta Vista intersects the east-and-west road very near the crossing.

About three months before the accident the defendant had ballasted its track to a depth of six to eight inches, and the top of the rails at the crossing was about eighteen inches above the highway. Crossing-planks had been placed on the outside of the rails, and the face of the incline was from two and one-half to three feet down to the level of the highway. A person traveling north over the road from Alta Vista in a carriage could see a train at or about the station until he reached a point about 265 feet from the crossing, when his view would be obscured by the hill through which the track was cut until he reached the culvert, where a train approaching from the southwest could be seen for a distance of 250 to 300 feet. Advancing, eighteen feet from the culvert it could be seen for 400

to 500 feet. At a point fourteen feet from the east rail of the track it could first be seen at the station from the seat in the carriage.

The deceased was forty-eight years of age and had resided about a quarter of a mile from the crossing, which he had used frequently, for twenty years, but there was no evidence that he had passed over it since the ballasting of the road. On the day of the accident he had attended church in town, passing from his home to town over another crossing close to the station. He left the church a little after noon in a covered phaeton, drawn by one horse. With him in the carriage were his wife's mother, and his son, four years old. He proceeded north along the road east of the track toward the crossing first referred to, north of town. The day was clear, the sun was shining and the horse was gentle. Trains passed over the road every hour or half-hour. The horse was driven toward the crossing on a walk, and about the time that the phaeton reached the culvert an east-bound passenger-train, twelve hours late, running very fast, was approaching from the southwest, beyond and near the station. The deceased continued to drive to and upon the crossing. The horse had passed over the track when the phaeton was struck in the back part by the train and demolished, and its occupants killed, the horse escaping uninjured. After the front wheels were over the east rail the horse stopped, and then proceeded rapidly forward, when the collision occurred. The length of the stop can not be stated, but it was sufficient to be noticed by the only eye-witness of the occurrence, who was about one-fourth of a mile away.

The evidence tended to show that five or six short, sharp danger signals were sounded by the whistle immediately before the collision, but that the whistle was not sounded for the approach to the crossing. After the track was ballasted, and before the accident, the trustee of the township had notified the section foreman having

charge of that part of the track that complaint had been made in regard to the crossing; that it was unsafe, and that the company would have to fix it. Shortly after the death of Anderson the culvert was extended for eight feet, and the approach to the track was widened and raised.

*L. S. Ferry, T. F. Doran, Z. T. Hazen,* and *R. H. Gaw,* for the plaintiff in error.

*M. A. Low,* and *Paul E. Walker,* for the defendant in error.

The opinion of the court was delivered by

BENSON, J.: The negligence charged in the petition was the failure to give warning of the approach of the train to the crossing, and allowing the crossing to be defective by failing to raise the roadway as it approached the track to conform to an elevation of the track by ballasting. Proof was offered tending to show negligence as averred, but a demurrer was sustained upon the ground, as stated in defendant's brief, that the evidence proved that the deceased was guilty of such contributory negligence as to bar a recovery. We must determine, therefore, whether the plaintiff's evidence conclusively proved such contributory negligence. If it did not, a question of fact was presented for the jury. (*Kinchlow v. Elevator Co.,* 57 Kan. 374.) On the other hand, if only one inference or deduction could be drawn from the facts shown by plaintiff's evidence, the question was one of law for the court. (*Dewald v. K. C. Ft. S. & G. Rld. Co.,* 44 Kan. 586; *Railway Co. v. Hanson,* 67 Kan. 256.)

The rule for determining the conditions upon which evidence of negligence presents only a question of law for the court has been discussed in a multitude of cases. In *Railroad Company v. Stout,* 84 U. S. 657, Mr. Justice Hunt undertook to define the respective functions of court and jury, in language quoted and approved as the

true rule in *K. P. Rly. Co. v. Pointer,* 14 Kan. 37. In the latter case Mr. Justice Brewer, in the opinion, said:

"When the facts are disputed, it makes a question for the jury. When the facts are undisputed, and but one deduction is to be drawn from them, there is simply a question of law for the court. But where the facts, though undisputed, are such that when taken singly or in combination different minds will come to different conclusions as to the reasonableness and care of the party's conduct, the question is one which may properly be left to the determination of the jury." (Page 53.)

"It is true, in many cases, that where the facts are undisputed the effect of them is for the judgment of the court, and not for the decision of the jury. This is true in that class of cases where the existence of such facts comes in question rather than where deductions or inferences are to be made from the facts." (*Railroad Company v. Stout,* 17 Wall. [84 U. S.] 657, 663.)

"The jury are the triers of the facts, and whenever the testimony has reached such a point that it must be weighed and conclusions deduced therefrom the jury alone must make the deductions in the first instance, and not the court." (*Avery v. Railroad Co.,* 73 Kan. 563, 564.)

"Negligence is a question of fact for the jury. It is for them to determine whether there has been any negligence, and its nature and degree. Even where the circumstances are all admitted, if there is any doubt as to what they prove, it is still a question for the jury. It is not the duty of the court to draw inferences from the evidence, but only to pronounce legal conclusions from facts admitted, or properly found." (*U. P. R. W. Co. v. Rollins,* 5 Kan. 167, 181.)

Mr. Anderson was in his carriage, driving north. When near the right of way he turned west into the east-and-west road, just east of the crossing. His view of the track for the last 265 feet before reaching the crossing was completely obstructed until he was at the culvert, thirty-six feet from the east rail. At the culvert he could see up the track toward the station 250 to 300 feet, but the train was not then in sight, for if it had been, assuming that it was running fifty miles an

hour, it would have reached the crossing before he did. The evidence of the speed of the train was that it was running very fast. It did not stop at the station, and the evidence does not prove that it could have been seen at all until the deceased reached the point fourteen feet from the east rail. He was then at least eighteen feet from the point of collision, as the rear end of the buggy was hit, the horse having passed over the track. If the horse walked at the rate of four miles per hour, or six feet to the second, this required three seconds; adding two seconds for the stop, five seconds had elapsed, in which time the train, if running at the rate supposed, or seventy-five feet to the second, advanced 365 feet, and was not less than that distance from the crossing when it was seen or might have been seen by the deceased. If the train moved faster or the horse slower, or if the stop was longer, the distance was correspondingly greater. As the deceased was bound to use his faculties and be vigilant for his own safety, we must assume that he was looking and saw the train when it first came into view. The horse's head, fourteen feet from where he sat, was then very close to the east rail; the culvert, with an open ditch at each end, was twenty-two feet behind him, or about seventeen feet behind the rear wheels of his carriage; the on-coming train was about 365 feet from him; he was looking almost directly at the front of the engine, and it was coming on a down grade. But for the unfortunate stop —the cause of which was a fact for the jury to determine—he probably would have passed over uninjured. In making the attempt he lost his life. The duty of a person in such a situation is to exercise the care of an ordinarily prudent person for his own safety. This implies, as this court has often held, that he should look and listen for approaching trains. (*Railroad Co. v. Entsminger*, 76 Kan. 746.) If the view is obstructed, greater care must be exercised, and he should make vigilant use of his senses to determine whether there is

a present danger in crossing. (*C. R. I. & P. Rly. Co. v. Williams,* 56 Kan. 333.) When two ways are open to a person, and one is obviously safe and the other plainly dangerous, and he voluntarily chooses the latter he will ordinarily do so at his peril. (*Railroad Co. v. Brock,* 69 Kan. 448.) But a person of ordinary prudence is not expected to act with the same presence of mind and care under the stress of sudden and impending danger as he would in other conditions. (*Railroad Co. v. Brock, supra.*) Whether it was safer for the deceased to attempt to hold the horse with his head close to the track as the on-coming train rushed by, or attempt to turn aside, with the culvert behind him and the track in front, or to go forward, were questions to be decided and acted upon instantly. In view of the lamentable outcome we may believe now that it would have been better had he not attempted to go forward—but his conduct must be viewed in the light of his situation at the moment. He was not absolutely safe, as he might have been if standing upon the ground fourteen feet from the track. He had to manage his horse, and this required affirmative action upon the instant. The language used in the Brock case, *supra,* is pertinent to this situation:

"If one be placed in peril by the negligence of another and through consequent fear and bewilderment err in judgment and make an injudicious choice of a means of escape, contributory negligence can not be ascribed to him as a matter of law." (Syllabus.)

The precise question here is not whether the court believes that the deceased adopted an unwise course, or that he was negligent as matter of fact, but whether it can be determined as a matter of law that he was so negligent under the well-settled rules determining the respective duties of the judge and the jury. It is only in cases free from doubt, where reasonable persons would not disagree, that the question of negligence

becomes one of law. (*Young v. Railway Co.*, 57 Kan. 144.)

The witnesses differed in their estimate of distances at which a train could be seen at the points indicated by one approaching the crossing, but we have taken the testimony most favorable to the plaintiff as true, that being the duty of the court upon a demurrer to the evidence, where such testimony tends to prove the plaintiff's allegations. (*Farnsworth v. Clarke*, 62 Kan. 264.)

"Upon a demurrer to the plaintiff's evidence, every propitious fact which it fairly supports is accepted as proved, and every favorable inference which may be fairly deduced must be indulged." (*Hoffmeier v. Railroad Co.*, 68 Kan. 831, 832.)

We must, also, in considering the duty of the deceased to look and listen and in determining the distance at which he saw or ought to have seen the train, remember that he was bound to look for trains from both directions. The fact that the evidence left the distance of the train when it could first be seen in some uncertainty does not militate against the plaintiff's contention. Contributory negligence is a defense to be proved by a preponderance of the evidence (*Railway Co. v. Lee*, 66 Kan. 806), unless it is affirmatively shown by the plaintiff's testimony.

"But before the case could be taken from the jury on the ground of contributory negligence, it should be established beyond cavil or dispute, leaving no room for differences of opinion upon the question." (*Beaver v. A. T. & S. F. Rld. Co.*, 56 Kan. 514, 518.)

(See, also, *Railroad Co. v. Powers*, 58 Kan. 544.)

Without further citation from the opinions of this court in the numerous cases involving personal injuries at railroad-crossings, it is sufficient to say that after a careful examination we are constrained to hold that they support the claim of the plaintiff that the alleged contributory negligence of the deceased was,

under the evidence, a question of fact for the jury, and not one of law for the court.

A witness familiar with the topography of the region was asked if he had made tests to determine whether the noise of trains coming toward the cut from the southwest would be deadened by the cut and the surroundings to a man on the highway. An objection was sustained, and the plaintiff complains of the ruling. The evidence sought was competent upon proof that the place was the same, and that the test was made under the same or similar circumstances. The rule is thus stated in *Railway Co. v. Townsend,* 71 Kan. 524, approving an earlier statement made in *Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667:

"If the conditions at the crossing were such that the statutory or ordinary signals were insufficient, then other and more effective warnings should have been given. It was competent to show by witnesses that had made a test at the same place, and under substantially similar circumstances, how far the whistle or bell of trains could be heard, and the effect of the cut and obstructions in deadening the sounds of approaching trains." (Page 526.)

The same rule is applicable to evidence offered to show that the smoke and steam from engines in the cut could not be seen at the crossing. The following question was asked of a witness familiar with the locality:

"State whether or not you ever made tests to ascertain whether the smoke and steam emitted by a train can be observed by a person standing in the highway over the culvert described, about thirty-six feet. east of the crossing, if the train is running fast, on a clear day, and wind is blowing from the north."

Atmospheric conditions, the coal used, the time of its application to the fire and other circumstances would affect the weight of such testimony, but would not make it incompetent. The result of tests or experiments made under proper conditions are often admissible as tending to prove a fact in issue. (Gillett,

Ind. & Col. Ev. § 66; *Innis v. Steamboat Senator,* 4 Cal. 5; *Burg v. C., R. I. & P. R'y Co.,* 90 Iowa, 106; *Brown v. S. C. & P. Ry. Co.,* 94 Iowa, 309; *The State v. Asbell,* 57 Kan. 398.) In offering such testimony care should be observed to show that the tests were made within the rule stated as to place and circumstances, and the court will not allow the evidence unless these requirements are observed.

It is argued that this evidence was incompetent because the company was not bound to send up smoke signals or make a noise in running its train. The evidence, however, was offered to negative an imputation of contributory negligence which might be made if the smoke was visible or the noise of the on-coming train heard by the deceased in time to have saved his life by the exercise of proper care. (*Mo. Pac. Rly. Co. v. Moffatt,* 56 Kan. 667.)

A witness residing near the crossing, who had worked upon that section of the track, testified that he had had occasion and opportunity to observe the speed of passenger-trains; that his attention was drawn to the train in question from where he was sitting at home by hearing the danger signals, and that he saw it and had an opinion as to the rate of speed at which it was running, but he was not allowed to give it. The evidence should have been received for the reasons stated in *Railway Co. v. Holloway,* 71 Kan. 1.

The plaintiff attempted to prove by witnesses who had used the crossing what had been the effect of the ballasting of the track upon their own teams and vehicles. This was properly refused. (*City of Parsons v. Lindsay,* 26 Kan. 426.)

Some other matters are discussed in the briefs but they pertain to questions that are within the principles already stated, or that were not necessarily before the court in considering a demurrer to the evidence. The

judgment is reversed, and the cause remanded for a new trial.

PORTER, J. (dissenting) : I am unable to concur because the evidence, in my opinion, compels the conclusion that the deceased was guilty of such contributory negligence as prevents a recovery. This was a public crossing with which he had been familiar for more than twenty years. He lived less than eighty rods away from it. The change in the grade of the tracks had been made three months before. If we assume that he knew nothing of this fact, and that, but for the change in the grade, he would have had two seconds more time in which to cross, he was still guilty of great negligence in attempting to drive across the track in front of an on-coming train, as close as this was, in broad daylight. When he was in a position to have seen the train, had he looked, he was in a place of comparative safety, provided he stopped. The horse he was driving was gentle; there was nothing behind him except a ditch seventeen feet away, and this would not have prevented him from backing the horse and vehicle if that were necessary to render him absolutely safe. We know, of course, he never saw the train; he never looked. A man of his age and experience would have thought too much of the safety of himself and two members of his family to have taken the chance. He would have been grossly negligent in driving across under those circumstances if the track had not been changed, although he might possibly have escaped a collision.