[No. 11767.   Department Two.   February 28, 1914.]

ELLA AMSBARY, *Respondent*, v. GRAYS HARBOR RAILWAY &
LIGHT COMPANY, *Appellant*.[1]

EVIDENCE—DEMONSTRATIVE EVIDENCE — EXPERIMENTS — SIMILARITY
OF CONDITIONS—OFFER OF PROOF.  In an action for the death of a per-
son who fell and lay near the street car tracks in the nighttime, and
was struck on the head by the running board at the side of the car,
upon an issue as to whether the motorman was guilty of negligence
in failing to see the deceased in time to have stopped the car, it is
error to exclude an offer of proof of experiments with a dummy,
made under substantially similar conditions, tending to corroborate
the motorman's testimony that it was impossible to see the deceased
until too late to stop the car.

SAME — EXPERIMENTS — PRELIMINARY EVIDENCE OF SIMILAR CONDI-
TIONS—DISCRETION.  In such a case, the exclusion of preliminary evi-
dence of the similarity of conditions at the time the experiment
was made is not within the discretion of the court, as upon the
question of the sufficiency of such evidence to authorize evidence
of the result of the experiment.

SAME—SUBSTANTIALLY SIMILAR CONDITIONS.  Upon an offer of
proof of an experiment to show the effect of conditions at the time
of an accident, it is only necessary to substantially reproduce a
similarity of the conditions that would have some influence upon
the result.

SAME—SIMILARITY OF CONDITIONS—DISCRETION—REVIEW.  The ex-
ercise of discretion in the admission or rejection of evidence of
experiments made out of court will be viewed more critically when
the evidence is rejected than when it is admitted; since it often
has more to do with the weight of the evidence than with its rele-
vancy.

Appeal from a judgment of the superior court for Chehalis
county, Sheeks, J., entered June 24, 1913, upon the verdict
of a jury rendered in favor of the plaintiff, in an action for
the death of a pedestrian struck by a street car.   Reversed.

*Bridges & Bruener*, for appellant.

*A. Emerson Cross* and *Hugo Metzler*, for respondent.

[1]Reported in 139 Pac. 46.

PARKER, J.—The plaintiff seeks recovery of damages which she claims resulted to her from the death of her husband, caused by the negligence of the defendant in the operation of one of its street cars. A trial before the court and a jury resulted in verdict and judgment against the defendant, from which it has appealed.

Appellant operates a street railway in and between Aberdeen and Cosmopolis. On October 10, 1912, at 7:25 in the evening, respondent's husband, having fallen "in a heaped-up condition," as expressed by a witness, near the westerly rail of appellant's track leading from Aberdeen to Cosmopolis, was struck on his head by the lower step of one of appellant's cars, resulting in his death soon after. He was seen to fall in that position a few minutes before being struck by the car. The evidence indicates that he was very much under the influence of intoxicating liquor at the time. Whether his fall was caused by his intoxication or by one of his fits, which the evidence indicates he was in some degree subject to, is not clear; nor is it certain as to whether he was unconscious or unable, of his own volition, to extricate himself from his dangerous position before he was struck by the car.

There is apparently no uncertainty as to the time being 7:25 in the evening, since this was readily ascertainable by the regular running time of the particular car. It also seems certain that darkness had come some time before the accident occurred, and that the only light of any consequence was from the headlight of the car and comparatively small electric lights at street crossings some three hundred feet apart. The accident occurred about midway between two of these street lights. The car was running south on a straight, level track, for a distance of 670 feet, before striking deceased. A plank road runs along the westerly side of the street, parallel with the car track, with a space of 43 inches between them. This plank road is 24 inches higher than the track, the space between being nearly filled with sawdust, which slopes from near the surface of the plank road down

to the ends of the ties of the track. The lower step of the car was 20 inches above the ties of the track, and extended about 25 inches out beyond the rails. From these facts it would seem that deceased's position by the side of the track can be determined with a considerable degree of accuracy.

The speed of the car when the motorman first saw deceased was from 13 to 15 miles per hour, which is not claimed to be an excessive rate of speed at that place. The motorman claims that he was not able to see deceased until within 30 feet of him, and that the car was stopped as quickly as possible thereafter. The car ran past deceased after striking him, about two or three car lengths, before it could be brought to a stop. The motorman also claims that no portion of deceased's body was upon the track before being struck by the car. The ties of the track were not planked or graded over so as to make the space occupied by the track suitable for ordinary travel. Indeed, the street was not improved at all for ordinary travel, except by the plank road along which, evidently, all ordinary travel of the street proceeded. The neighborhood is an outlying district near the common corporate boundary of Aberdeen and Cosmopolis. The evidence tended to show that a person dressed as deceased was, and in his position at the side of the track, would not readily be seen by a motorman on an approaching car, even though such car were supplied with a strong headlight.

The principal claim of negligence made by counsel for respondent on the part of the motorman seems to be that he did not exercise due care in observing the track ahead of the car, and discover deceased at the side of the track in time to stop the car before striking him. We do not understand that there is any serious contention against the motorman's claim that he could not stop the car at the rate it was going within a distance of 30 feet, nor that the speed of the car was excessive at that place. For the purpose of corroborating the motorman and showing that he could not see

the deceased until within such a short distance that the car could not be stopped before striking him, and for the purpose of showing the greatest distance at which the deceased could be seen from the approaching car, having in view deceased's peculiar situation, the color of his clothes, and the nature of the sloping sawdust upon which he rested, counsel for appellant offered testimony of witnesses to an experiment had after the accident occurred, under substantially the same conditions as at the time of the accident. This offer of proof was rejected by the trial court, which ruling is claimed to be erroneous by counsel for appellant, entitling it to a new trial. A witness who had arrived at the place of the accident soon after it occurred, while deceased lay upon the plank road, very near where he had been struck by the car, was upon the witness stand when the offer of proof was made by appellant's counsel as follows:

"Q. Suppose that a man during the night where it was dark, a man was crouched down between the plank roadway there and the rail, nearest rail, and he was crouched so that the lower step of the car would hit him in the head and he was dressed in dark clothes . . . I will ask you if it would be difficult for a motorman to see a man under the circumstances I have named. A. It would be, it would be rather difficult. Q. Did you recently make a dummy man? A. I did . . . Q. About how long ago was that? A. A little over two weeks ago. Q. I will ask you whether or not you placed that dummy between the plank roadway and the nearest rail of the car track at about the location that you saw this man at the time of his injury. Mr. Cross: Same objection. Court: I sustain the objection . . . Mr. Bridges: In order that we may dispose of this matter now I would like to make an offer . . . We offer to show by this witness that he, about two weeks ago, made a dummy in the form of a man, dressed as the deceased was dressed and that after night on an occasion substantially the same as the night of the injury he took this dummy and placed it on the sawdust between the railroad track and the plank roadway in the position and location that the deceased was at the time of his injury and that after that was done, a car, the same car

that was run at the time of the injury to the deceased was started from Aberdeen; that witnesses occupied a position in the front portion of the car with the motorman with certain information given them concerning the dummy, given them in advance, and that they were on the car in front with the motorman, the motorman being the same motorman that was driving the same car which was in the same condition as it was at the time of the accident and we offer to prove by this and other witnesses the result of that investigation, the result of what happened there, we offer to prove it by this and other witnesses, parties who were standing with the motorman looking through the motorman's window as to what they could see and when, if at all, they did see this dummy object. We offer to show that the conditions were the same as at the time of the injury. Mr. Cross: Objected to as incompetent, irrelevant and immaterial. Court: I will sustain the objection. Mr. Bridges: Exception. Mr. Bridges: Such would be your honor's ruling if those witnesses whom I have mentioned were called? Court: I presume so. Mr. Bridges: I don't want to keep them here if that is the situation. Court: Yes. Mr. Bridges: Exception."

This experiment occurred two weeks before the trial, and eight months after the accident. The ruling of the trial court and argument of counsel for respondent in support thereof, does not point to any theory upon which the correctness of the ruling is rested other than the seeming assumption on the part of the trial court and counsel that there was an insufficient similarity of conditions attending the accident and the experiment, the result of which was proposed to be shown. Plainly, the language of the offer was not deficient in that regard. It may be that, had counsel for appellant been permitted to proceed, there would have been a failure to show such substantial similarity of conditions as to render testimony concerning the result of the accident admissible. On the other hand, the similarity of conditions might have been proven sufficiently to render testimony as to the result of the experiment admissible and very helpful to the jury in determining the question of the motorman's negligence in so far as his observation of the track ahead of the car is con-

cerned.   It seems quite clear to us that counsel for appellant were entitled to lay the foundation for offering testimony touching the result of the experiment.   Yet, this is the very thing they were, by the ruling of the court, prevented from doing; which ruling seems to have no other foundation than the court's assumption that there was, in fact, no sufficient similarity of circumstances attending the accident and the experiment.   The real error of the court lies in the fact that counsel for appellant were not permitted to introduce evidence touching this preliminary question; while the court, if the theory of counsel for respondent be correct, was apparently deciding the question of counsel's right to prove the result of the experiment.   The court was not yet called upon to rule upon the admissibility of evidence touching the result of the experiment, and it seems clear that the offer of proof touching the preliminary question of similarity of conditions was material and relevant to that question.   We are of the opinion that the ruling of the court was clearly erroneous in so far as it excluded proof of the preliminary question of similarity of conditions.   In its final analysis, this would seem to be decisive of the real question here presented; but in view of the fact that a new trial must follow because of this error, we deem it proper to make some further observations.

, Counsel for respondent invoke the general rule that the admission of evidence as to the result of experiments of this nature is within the discretion of the trial court, and argue that there has been no abuse of such discretion upon the trial of this case.   It can hardly be seriously argued that this rule of judicial discretion is applicable to the admissibility of proof of similarity of conditions attending the accident and the experiment, in the same sense that it is applicable to the question of the *sufficiency* of such preliminary proof of similarity to render evidence of the experiment admissible.   But counsel for respondent seem to argue that, because of the claimed involved conditions attending the accident, the court did not abuse its discretion in deciding, as counsel seem to

assume, that it was impossible to reproduce such conditions with sufficient similarity to render evidence of the result of the experiment admissible. We are unable to see any other theory upon which the ruling of the court can be rested, in view of the fact that it declined to hear evidence upon the preliminary question of similarity of conditions. Counsel for respondent call our attention to *Halverson v. Seattle Elec. Co.*, 35 Wash. 600, 77 Pac. 1058, where the experiment involved was a demonstration to show the movement and swinging effect of a street car operated upon a curve. The court there stated the attempted proof of similarity of conditions, and its holding upon the trial court's exclusion of the evidence as to the result of the experiment, as follows:

"Appellant next contends that the court erred in refusing to permit certain witnesses to testify to the results of experiments made by them in running the same car upon which the accident occurred through the same curve. The witnesses showed that these experiments were made under different conditions from those existing at the time of the accident. They were made at a different time of day, when the electric current would have less load and, therefore, more power. The experiments were also made with no load upon the car, and upon a dry rail, while the car at the time of the accident was heavily loaded with passengers and the rails were wet . . .

"The similarity of the circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse. Where the conditions and circumstances are so different or dissimilar as to probably bring about different results, as they evidently were in this case, it is not an abuse of discretion to exclude the results of the experiments."

Manifestly, we have no such situation here. Had counsel been permitted to proceed, it is true they might have failed in their proof of similarity of conditions, as in that case; but, clearly had they proved similarity of conditions according to their offer, they would have been entitled to show the result of the experiment. Counsel for respondent also rely upon

13—78 WASH.

the decision of this court in *Lasityr v. Olympia*, 61 Wash. 651, 112 Pac. 752, where one of the questions involved was the quantity of light upon a certain portion of a sidewalk where an accident occurred.   Aside from the citation and review of some authorities, the following is all that was there said upon the question presented:

"The appellant offered testimony tending to show that the lamp at the intersection of Fourth Street and Columbia Street on the night preceding the trial of this action was identical with the lamp at the same point on the night of the accident; that the voltage passing through the arc light system on the night of the accident was greater than the voltage on the night preceding the trial; and that on the night preceding the trial witnesses could readily read newspapers on the sidewalk at the place of the accident by the light of the lamp in question.   The appellant further offered to prove by an electrical expert the quantity of light in candle power cast on the sidewalk at the place of the accident on a dark and cloudy night.   These several offers were rejected, and the ruling of the court is assigned as error.   Experiments made out of the presence of the court are competent evidence in a proper case, but before they can be admitted, it must appear that they were made under substantially the same conditions as existed at the time of the transaction in question, and the trial court is necessarily vested with a large discretion in determining the preliminary questions of fact upon which their admissibility depends. . . .

"While we are not prepared to say that it would have been error to admit proof of these experiments, we do not think that the quantity of light given out by an arc light, at all times and under all conditions, is so certain and unvarying as to render the ruling of the court erroneous, or manifest an abuse of sound judicial discretion."

We do not think that case furnishes an answer to the problem here involved.   That opinion furnishes us but little light upon the nature of the offer of proof there made.   However, a reference to the original briefs in that case indicates that it consisted of an offer of the testimony of witnesses touching the fact that the electric light involved was located the same

at the time of the accident as at the time of the experiment, and that it was supplied at both times with current of the same voltage, as shown by the records of the light company. But it does not appear that there was any testimony of witnesses offered who saw the light and its effect both at the time of the accident and at the time of the experiment. We deem it a sufficient comment upon that decision to say that, upon its face, it seems to indicate the extreme limit of the exercise of the trial court's discretion in excluding the offered evidence, and we do not regard it as controlling beyond its application to the particular facts there involved, and as a statement of the general rule of judicial discretion touching the admission of evidence of the result of experiments.

In view of the fact that the purpose of the experiment here involved was to determine the result of conditions similar to those existing at the time of the accident, with a view to having witnesses testify as to the greatest distance at which deceased could have been seen from an approaching car, it was only necessary that such conditions be substantially reproduced in so far as they related to that particular question. As is said in 1 Wigmore, Evidence, § 442: "This similarity need not be precise in every detail. It need include only those circumstances or conditions which might conceivably have some influence in effecting the result in question." Now, had counsel for appellant been permitted to prove, and been able to prove, substantial similarity of conditions according to this rule, it surely would have been an abuse of discretion on the part of the trial court to deny them the privilege of producing evidence in the form of testimony of witnesses who were present at the time of the experiment and thereby became enabled to testify as to the greatest distance at which the deceased could have been seen from the approaching car. Clearly, there is nothing inherent in the conditions indicated by this record that renders it impossible, or even improbable, that sufficient similarity of con-

ditions could be reproduced to render admissible evidence of the result of the experiment.

Counsel for respondent seem to proceed upon the theory that a question of this nature is practically beyond review here because of the claimed large discretion vested in the trial court. A review of the authorities, however, will disclose many cases where trial courts have been reversed because of an abuse of their discretion in excluding such evidence. While, as we have already noticed, this is not the exact question before us, yet in view of what will likely occur upon new trial, we deem it appropriate to notice a few of the decisions bearing upon this question. In *Gambrill v. Schooley*, 95 M'd. 260, 52 Atl. 500, 63 L. R. A. 427, involving an experiment as to the distance at which a human voice could be heard under certain conditions, the court said:

"The nineteenth and twentieth exceptions relate to the exclusion of evidence offered by the defendant and by Sutton, a civil engineer, who had surveyed the premises where the alleged slanderous words were spoken, that there was no change in the topography or circumstances and that they had experimented with the voice to ascertain if the voice of a person standing where the defendant is said to have stood when the words charged were uttered, and speaking in a loud tone, could be heard by one standing where the plaintiff is said to have stood at that time and also where Brown and wife are said to have stood at the same time. This question was considered in *Richardson v. State*, 90 M'd. 117, and similar experiments as to the range and accuracy of vision were there held admissible, and that case was cited and relied on in the recent case of *Keyser v. State*, *ante* p. 96. We think this evidence should have been received, the defense being that the words were not spoken."

The decision in *Richardson v. State*, 90 Md. 109, 44 Atl. 999, referred to in this quotation, involved an experiment for the purpose of determining the ability of one person to see another under certain conditions. In *Wilson v. State* (Tex. Cr.), 36 S. W. 587, dealing with the problem of an experi-

ment as to how distinctly the human voice could be heard under certain conditions, the court said.

"Two theories are presented by the state: First, that the appellant intentionally killed Mrs. Ratliff; and, second, that with his malice aforethought he shot at the husband of Mrs. Ratliff, and accidentally killed his wife, the deceased. The testimony of one Hanson, taken before the examining court, was introduced in evidence by the state. He swore that he heard the appellant use certain words, speaking to the deceased, Mrs. Ratliff, at the time of the shooting, to wit: 'I will shoot through you. I will shoot you both.' It was admitted that Hanson was 100 yards away, and that the wind was blowing the sound from, and not towards him. To test whether from his position he could have heard the words to which he testified, a number of persons went upon the ground on a day when conditions as to wind, etc., were the same, and under practically the same conditions. These parties were placed in the position of the witness Hanson and others at the well, at which point the shooting occurred, and the words ascribed to the appellant were spoken by those at the well in different ranges of voice from the lowest to the highest; and it was proposed to be proved by these parties, and appellant alleges could have been proved by them, that they did not hear such words so spoken at the well, at the position occupied by Hanson, and that their hearing was good, which proof was rejected, and appellant excepted. The question before us is, is such testimony admissible? It was. This precise question was before the supreme court of Ohio in *Smith v. State*, 2 Ohio St. 511, and it was there held that such testimony was admissible. The question came before the supreme court of Tennessee in *Byers v. Railway Co.*, 29 S. W. 128, and there such testimony was held admissible."

In *Johnson v. Chicago, R. I. & P. R. Co.*, 80 Kan. 456, 103 Pac. 90, dealing with an experiment touching the ability of persons to both see and hear under certain conditions, the court said:

"A witness familiar with the topography of the region was asked if he had made tests to determine whether the noise of trains coming toward the cut from the southwest would be deadened by the cut and the surroundings to a man on the

highway. An objection was sustained, and the plaintiff complains of the ruling. The evidence sought was competent upon proof that the place was the same, and that the test was made under the same or similar circumstances. The rule is thus stated in *Railway Co. v. Townsend*, 71 Kan. 524, approving an earlier statement made in *Mo. Pac. Rly. Co. v. Moffatt*, 56 Kan. 667: 'If the conditions at the crossings were such that the statutory or ordinary signals were insufficient, then other and more effective warnings should have been given. It was competent to show by witnesses that had made a test at the same place, and under substantially similar circumstances, how far the whistle or bell of trains could be heard, and the effect of the cut and obstructions in deadening the sounds of approaching trains.' (Page 526.) The same rule is applicable to evidence offered to show that the smoke and steam from engines in the cut could not be seen at the crossing. The following question was asked of a witness familiar with the locality: 'Q. State whether or not you ever made tests to ascertain whether the smoke and steam emitted by a train can be observed by a person standing in the highway over the culvert described about 36 feet east of the crossing, if the train is running fast, on a clear day, and wind is blowing from the north.' Atmospheric conditions, the coal used, the time of its application to the fire, and other circumstances, would affect the weight of such testimony, but would not make it incompetent. The result of tests or experiments made under proper conditions are often admissible as tending to prove a fact in issue. (Gillett, Ind. & Col. Ev., § 66; *Innis v. Steamboat Senator*, 4 Cal. 5; *Burg v. C., R. I. & P. Ry. Co.*, 90 Iowa 106; *Brown v. S. C. & P. Ry. Co.*, 94 Iowa 309; *The State v. Asbell*, 57 Kan. 398). In offering such testimony care should be observed to show that the tests were made within the rule stated as to place and circumstances, and the court will not allow the evidence unless these requirements are observed."

See, also, *Chicago, St. L. & P. R. Co. v. Champion* (Ind.), 32 N. E. 874, 23 L. R. A. 861; *Byers v. Nashville, C. & St. L. R. Co.*, 94 Tenn. 345, 29 S. W. 128; *Fisher v. Travelers' Ins. Co.*, 124 Tenn. 450, 138 S. W. 316, Ann. Cas. 1912 D. 1246; *Woelfel Leather Co. v. Thomas*, 68 Ill. App. 394; *Smith v. State*, 2 Ohio St. 511; *Clark v. State*, 38 Tex. Cr. App. 30,

40 S. W. 992. In the last cited case, the court made some very pertinent observations, as follows:

"There are some difficulties attending the admission of this character of evidence. In the first place, in making an experiment some difficulty will be encountered in making it under the same conditions surrounding the original transaction, but it does not occur to us that that should be a reason why this character of testimony should be excluded. Of course, if the evidence regarding an experiment showed one made under circumstances and surroundings so dissimilar to the original transaction as that it would not shed any light upon it, there would be no error in its exclusion. See *State v. Fletcher* (Or.), 33 Pac. 575. But if the evidence shows that the experiment was made under circumstances similar, or approximately similar, to those which surround the original transaction, and such experiment would serve to shed any light upon that transaction, we can see no reason for the exclusion of such experiment, although it might not have been made under exactly similar conditions as attended the original transaction. The dissimilarity would not exclude, but would go to its weight before the jury. Another difficulty in connection with such testimony is that evidence of experiments made are collateral in their nature, and are liable to consume the time of the court in a trial of such collateral issues. It has been held, on this account, that the court will not stop a case in order that an experiment be made. *People v. Levine*, 85 Cal. 39, 22 Pac. 969, and 24 Pac. 631. And it has been urged, as it is urged in this case, that the evidence was properly excluded; that such evidence is not admissible, on account of the danger of fabrication. But in our opinion this furnishes no good reason for its exclusion. All evidence, we might say, can, under circumstances, be fabricated; but the liability of fabrication rarely, if ever, alone, furnishes a good reason for the exclusion of evidence. Upon principle and authority, this character of testimony, where the experiment appears to have been made under conditions similar, or nearly similar, to those which attend the original transaction, and where such experiments would tend to shed any light upon said original transaction, is admissible."

In every one of the above noticed cases, the trial court was reversed because of its rejection of offered evidence as to the

result of experiments had under substantially similar conditions as attended the original occurrence. We have quoted only from those involving hearing and seeing, but the others are equally applicable in principle. Of the decisions wherein trial courts have been affirmed, in receiving such evidence, the following, to which many more might be added, are of interest: *Boston Woven Hose & R. Co. v. Kendall,* 178 Mass. 232, 59 N. E. 657, 86 Am. St. 478, 51 L. R. A. 781; *State v. Woodrow,* 58 W. Va. 527, 52 S. E. 545, 112 Am. St. 1001, 2 L. R. A. (N. S.) 862; *Tackman v. Brotherhood of American Yeoman,* 132 Iowa 64, 106 N. W. 350, 8 L. R. A. (N. S.) 974; *Augusta Railway & Electric Co. v. Arthur,* 3 Ga. App. 513; *Brooke v. Chicago, R. I. & P. R. Co.,* 81 Iowa 504, 47 N. W. 74; *Burg v. Chicago, R. I. & P. R. Co.,* 90 Iowa 106, 57 N. W. 680, 48 Am. St. 419; *Beckett v. Northwestern Masonic Aid Assn.,* 67 Minn. 298, 69 N. W. 923; *Young v. Clark,* 16 Utah 42, 50 Pac. 832.

While due care should be exercised by the trial court in seeing that substantial similarity of conditions is proven as a prerequisite to admitting the evidence as to the result of an experiment, care should also be exercised not to reject such evidence when it is manifest that it will tend to shed light upon the original transaction, especially when the real question is circumscribed by such narrow limits as in this case; it being simply as to the distance at which a person upon an approaching car could see deceased at the side of the track. It surely would not be very difficult to reproduce and show the similarity of conditions as to position and appearance of deceased by the track, as to the degree of natural darkness, and the quantity of artificial light present, and as to general surrounding conditions, to render the result of such an experiment of material aid to the jury in determining this, which became largely a controlling question in the case. It is worthy of note that the motorman's evidence stood alone upon this question. It was highly important that additional

evidence thereon, if obtainable, should be presented to the jury.

We believe the authorities warrant the assertion that, while appellate courts will not lose sight of the general rule that the admission or rejection of evidence of the result of experiments is largely discretionary in a trial court, the exercise of such discretion will, upon appeal, be viewed somewhat more critically when such evidence is rejected than when it is received. This would seem to be so because of the fact that the admission or rejection of such evidence, in so many instances, has to do more with its weight than with its relevancy, strictly speaking.

Counsel for appellant contend that the trial court erred in giving certain instructions to the jury, and in refusing to give others which were requested, touching the claimed contributory negligence of deceased and the motorman's duty, in the light of the last clear chance doctrine. In view of the seeming uncertainty as to the mental condition in which deceased was just prior to being struck by the car, and the fact that, upon a new trial, more light may be thrown upon that question by the evidence, we deem it unnecessary to do more than refer counsel and the court to the recent decisions of this court in *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934; and *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941. These decisions have both been rendered since the trial of this case, and we think will furnish all necessary light upon the questions involved in appellant's claim of error touching the instructions and requests therefor which are likely to arise upon a new trial. We therefore pass these claimed errors without discussion. We conclude that the judgment must be reversed, and appellant granted a new trial.

It is so ordered, and the cause remanded to the trial court for further proceedings.

CROW, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.