THE UNION PACIFIC RAILROAD COMPANY V. A. L.
ENTSMINGER.

No. 14,905. (92 Pac. 1095.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury at a Crossing—Contributory Negligence.*
   The failure of a person about to drive cattle upon a railroad-
   crossing to make vigilant use of his senses, so far as there
   is opportunity, when by taking such precautions an injury
   might be avoided, will bar a recovery, notwithstanding the
   negligence of the railway company in failing to give signals.

2. ———— *Failure to Look and Listen Not Excused.* The fact
   that the train that inflicted an injury was late will not ex-
   cuse a person familiar with the place and sensible of the
   danger from observing the usual precautions.

Error from Shawnee district court; ALSTON W.
DANA, judge. Opinion filed December 7, 1907. Re-
versed.

### STATEMENT.

THIS was an action to recover damages for the kill-
ing of four head of cattle at a highway crossing by
the defendant company. The jury returned special
findings, from which it appears that no whistle was
blown within eighty rods of the crossing; that when
the plaintiff heard the train it was within sixty-five
rods of the crossing and running at the rate of thirty
miles per hour; that if the whistle had been sounded
for the crossing, and the train had been running at "a
reasonably safe speed for that place," the plaintiff
could have saved his cattle; also, that if the plaintiff
had looked west at any time while within 400 feet of
the crossing he could have seen the train, if it had been
within half a mile.

The plaintiff alleged negligence in failing to sound
the whistle or to give other timely warning, and in
approaching the crossing at a dangerous rate of speed.
The court, however, instructed the jury that there was
no evidence of any negligence so far as the speed of

the train was concerned. The plaintiff recovered judgment, and the company brings the case here.

The facts are substantially as follow: A. L. Entsminger, the plaintiff, is a stock-raiser, living near Silver Lake, Shawnee county, Kansas. During the winter of 1903 he was accustomed in the morning to drive his cattle, numbering about fifty head, to a stalk-field about half a mile distant, and to drive them back in the evening. The road necessary to be taken crosses the railroad track twice, and parallels it, at a distance of about fifty feet from it, for half a mile between the two crossings. On the evening of February 13, 1903, plaintiff was returning as usual with his herd. He was following in a buggy, and with him were a young man, sixteen years old, and his grandson, four years old. They had passed the first crossing and were on the road parallel to the railroad track. When about 1000 feet from the second crossing, where the accident occurred, Entsminger looked back, but saw no train. He again looked back when about 600 feet from the crossing; and, when about 400 feet from the crossing, according to his custom, he bunched the herd of cattle preparatory to crossing the track. He then looked for trains, and, seeing none, started to drive his herd toward the crossing. When he was about 100 feet from the crossing, and the foremost cattle were just passing upon the crossing, he heard a rumbling noise and saw a train approaching. He then tried to prevent the herd from crossing, but the train struck four of them. There was no evidence tending to show that Entsminger looked for a train at any time after he was within 400 feet from the crossing until he heard the rumbling sound. In fact, upon cross-examination he testified as follows:

"Ques. Then you turned around and followed the cattle down, and the next thing you did, without looking again, was you heard the train; is that right? Ans. Yes, sir.

"Q. From this point, when you were 400 feet from

the track, you did n't look until you heard the train, and then you saw it coming? A. Yes, sir."

The jury found among other facts the following:

"Ques. Could not the plaintiff, if he had looked west at any time when he was within 400 feet of the crossing, have seen the train if it had been within one-half mile? Ans. Yes."

"Q. Would not the plaintiff, if he had looked west at any time when within 400 feet of the crossing, have had a clear view of the track for one-half mile or more? A. Yes."

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for plaintiff in error.

*George E. Overmyer* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The negligence of the defendant company in failing to sound the whistle on approaching the crossing was found by the jury. The only matter that we deem it necessary to comment upon is the alleged contributory negligence of the plaintiff in failing to look for an approaching train. After he left his field, and while driving his herd east along the road parallel to the track, he stopped and looked and listened several times; and when he reached the point 400 feet west of the crossing he diligently looked along the track. From that point to the crossing his view to the west was unobstructed for half a mile. He was assisted by a suitable person in managing and driving his cattle, and was having no difficulty with them, and there was nothing to prevent his looking for a train. But he did not look after leaving that point until his attention was drawn to the coming train by its rumbling, when he was 100 feet from the crossing and the head of his herd was just going upon the track. He then made all possible effort to save his cattle, but he could not, for want of time.

In these circumstances the rule announced in *U. P.*

*Rly. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529, applies. The plaintiff ought to have looked and listened within the 400 feet before driving his cattle upon the track, which itself was a warning of danger. He was familiar with the place and knew the peril, but still neglected to take the ordinary precautions after stopping at the point mentioned. In *Railroad Co. v. Holland,* 60 Kan. 209, 56 Pac. 6, it was held:

"A person familiar with a railroad-crossing, where she was injured, and who knew that a train was due, looked for a train when she was on a road 111 feet away from the crossing, and afterward drove the distance named on a road parallel with the track and upon the crossing without looking for a train, when, if she had looked at any point within 100 feet of the crossing, or when she was about to cross, she could have seen the coming train and averted the injury. *Held,* that she was guilty of contributory negligence." (Syllabus.)

The plaintiff in that case had looked for a train when she was 111 feet from the crossing, but not afterward, the view being unobstructed, and she was held to be guilty of contributory negligence. The plaintiff in that case knew that a train was due; while in this case the train that inflicted the injury was late. Mr. Entsminger, however, appears to have been sensible of the danger, for he watched for a train at other points, and it will not do to say that a person in such circumstances need only look and listen at the times when regular trains are due. It is common knowledge that trains are often run that are not upon schedule time, and that regular trains are often delayed. The plaintiff was approaching a public crossing of a great line of railway, and was thereby warned of danger; his failure to use his senses is not excused by the fact that the train was late.

In view of the peril to others as well as to the one whose person or property is injured, the rule requiring vigilance on the part of persons at railroad-crossings,

so often announced by this court, cannot be relaxed. (*Railroad Co. v. Willey,* 57 Kan. 764, 48 Pac. 25; *Young v. Railway Co.,* 57 Kan. 144, 45 Pac. 583; *Bressler v. Railway Co.,* 74 Kan. 256, 86 Pac. 472; *Railway Co. v. Wheelbarger,* 75 Kan. 811, 88 Pac. 531.)

As the findings of the jury state the facts upon which the plaintiff's negligence appears, the judgment is reversed, with directions to the trial court to render judgment in favor of the railway company.