A. K. COLEMAN, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 17,656.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Personal Injuries* — *Contributory Negligence.* A railway company is not liable for injuries suffered by a person in attempting to pass over its track at a street crossing merely because its employee managing the train ought, in the exercise of reasonable care, to have discovered his perilous situation and stopped the train, where his own negligence operating at the same time contributed to produce the injury.

2. CONCURRENT NEGLIGENCE—"*Last Clear Chance.*" The doctrine of the last clear chance does not apply so long as the parties are concurrently negligent.

Appeal from Kingman district court. Opinion filed May 11, 1912. Reversed.

*William R. Smith, Owen J. Wood*, and *Alfred A. Scott*, for the appellant.

*George L. Hay*, and *L. F. Walter*, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This action is for personal injuries suffered at a railway crossing at Kingman. Main street in Kingman extends north and south, and is crossed by the main track and sidetrack of the railway running east and west. The sidetrack is eleven feet north of the main track and parallel with it. The depot is situated 400 feet east of the crossing. There is an electric gong in Main street a few feet south of the main track. At the time of the accident a freight train with engine headed west stood on the main track between the crossing and the depot, and several box cars were upon the sidetrack at the side of a mill just west of the crossing and extending one or two feet over the sidewalk. A wagon drawn by a team of mules was on Main street approaching the crossing from the

north; at a point 150 feet north of the crossing the plaintiff got into this wagon and was seated on a board at the left side of the driver. The team proceeded in an ordinary walk as they approached the crossing. The plaintiff and the driver heard the gong ringing, and seeing the train standing on the main track east of the crossing kept on their way, both looking at that train. As the team entered upon the main track with their fore feet upon it, the driver and the plaintiff looked west and saw a string of box cars about forty feet west of the crossing moving east, pushed by an engine. They heard a call, stop! stop! from a man standing on the ladder of the side of the moving car at the east end of the train. The driver struck the mules with the lines, they sprang forward and cleared the track, but the front car collided with the wagon, throwing out the plaintiff and injuring him.

The cars on the sidetrack obstructed the view of the main track to the men in the wagon as they approached the sidetrack. The man on the ladder of the front car in the moving train was the conductor, who was there to look out as his train was backing down the track and who called out when he saw the team.

Evidence that there was no signal given by bell or whistle of the approaching train must be taken as true in view of the general finding.

In answering special questions the jury found that after crossing the sidetrack a train approaching from the west could be seen by one in the middle of Main street for one-fourth of a mile or more, and in the middle of the sidetrack it could be seen from 75 to 100 feet; that from the position of the driver just before the team entered upon the main track it could be seen for 75 or 100 feet; that the driver first looked west when the east end of the moving train was thirty or forty feet west of the point where the team crossed the main track; that the fore feet of the mules were then upon that track; that the plaintiff made no effort to

learn whether a train was approaching from the west and did not ask the driver to do so; that it was broad daylight at the time; that both plaintiff and the driver were well acquainted with the crossing and its surroundings but took no pains to get in position to see a train coming from the west before the mules went upon the track; and that if the team had stopped when their heads were several feet from the track the plaintiff could have seen the approaching cars several feet to the west.

Concerning the conduct of the conductor of the colliding train, the jury returned the following:

"Q. What did conductor Dowel do when he first saw plaintiff and his companion driving south long Main street toward the main line of defendant's track, with reference to signaling the engineer and warning the drivers of said mules? Ans. Hollowed 'look out.' He gave signal to engineer."

The jury also found that the conductor then hallooed to the men on the wagon, and gave a signal to the engineer, who then put on air and reversed the engine as soon as he could do so after receiving the signal; that he could have done nothing further than he did do to stop the engine; and that it ran sixty or seventy-five feet thereafter. Another finding was made as follows:

"Q. Did conductor Dowel know, or could he have known by the use of ordinary care, that the plaintiff and his companion intended to cross the track in front of the moving cars and ignore the ringing of the electric bell at the time and place in question? If so, what would have made it to so appear? Ans. Yes. He could have seen the team in motion and the men looking east."

In answer to other questions of similar import substantially the same answers were given.

The jury were instructed that the plaintiff was clearly negligent in going upon the track as he did, which precluded a recovery for his injuries unless the jury should find that the railway company might by

the exercise of reasonable care and prudence after discovering his perilous situation have avoided injuring him. In the next instruction the jury were informed that the contributory negligence of the plaintiff would not defeat his action if the jury should find that the company might have avoided the injury to the plaintiff by the exercise of reasonable prudence after it discovered, or should have discovered, the perilous situation in which he had placed himself. An important difference will be noted in these two instructions. The words "or should have discovered" included in one were omitted in the other. In three following instructions repeating the same proposition in slightly different language the jury were again told that notwithstanding the plaintiff's negligence he might recover if the company after it discovered, or should have discovered, the perilous situation in which he had placed himself might have avoided the consequences by stopping the train and avoiding the injury. Thus it appears that the court intended to submit the case upon the doctrine of the last clear chance.

The jury having found that everything was done that could have been done to stop the train after the peril of the plaintiff was discovered, the only ground of recovery was the alleged negligence in failing to make such discovery in time to avoid the collision. The situation was this: The plaintiff and the driver negligently failed to look for an approaching train, when if they had looked after passing by the obstructing box cars they could have seen the cars coming from the west in time to have stopped the team and avoided the collision. The conductor, had he kept a proper lookout, might have seen them and stopped his train, and should have done so if they appeared to be heedless of its approach, and in that situation was negligent in failing to keep a proper look-out. The two men were also negligent in failing to look for a train after passing

13—87 Kan.

the end of the box cars on the sidetrack. The collision then was the immediate result of the concurring negligence of both parties. In *Dyerson v. Railroad Co.,* 74 Kan. 528, 87 Pac. 680, it was said in the opinion:

"The test is, What wrongful conduct occasioning an injury was in operation at the very moment it occurred or became inevitable? If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. If, however, each had such power, and each neglected to use it, then their negligence was concurrent and neither can recover against the other." (p. 536.)

In *Marple v. Railway Co.,* on rehearing, 85 Kan. 705, 118 Pac. 690, another part of the opinion in the Dyerson case, which seems to be applicable here, was quoted, and it was held that an instruction was fatally erroneous which contained the proposition that if the motorman discovered, *or ought to have discovered,* the perilous situation of the person injured in time to have avoided the injury, there might be a recovery although such person was negligent in placing himself in such situation. This subject was also considered in *Himmelwright v. Baker,* 82 Kan. 569, 109 Pac. 178, and the principles declared in the Dyerson case were followed.

The doctrine of the last clear chance was again considered in *Dunlap v. Railway Co.,* post, p. 197, where it was held that so long as both parties were concurrently negligent neither could recover.

In a separate instruction a phase of the doctrine of the last clear chance was given as stated in the fourth paragraph of the syllabus in the Dyerson case, but the other instructions just referred to, stating that the company might be held liable if the conductor ought to have discovered the plaintiff's perilous situation in time to have averted the injury, gave the jury warrant for basing a recovery upon that failure alone notwithstanding the negligence of the plaintiff operating at the same time. Upon the findings and evidence there ap-

pears to be no other basis for the verdict and so the error in the instructions affords grounds for reversal. The court is also of the opinion that. upon the facts found by the jury the appellee can not recover.

It is argued that the conclusion of the district court that the appellee was guilty of contributory negligence is erroneous; that because of the presence of the other train, toward which both men were looking, and the ringing of the gong, presumably caused by its presence on the track, and the entire situation, their conduct should not bar a recovery. But notice of a counter appeal was not given. (Civ. Code, § 578.) Besides, following many decisions of this court respecting the duty of a person to look out for trains when approaching a railroad crossing, the court did not err in holding that the plaintiff was negligent in failing to do so. This rule can not be relaxed. (*Railroad Co. v. Entsminger*, 76 Kan. 746, 92 Pac. 1095.)

The judgment is reversed with instructions to render judgment for the appellant upon the findings.