JOHN EDWARDS, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

No. 18,873.

### SYLLABUS BY THE COURT.

1. CONTRIBUTORY NEGLIGENCE — *Railroad Crossings — "Stop, Look and Listen."* Contributory negligence can not be imputed to one crossing a series of railroad tracks after having stopped, looked and listened, merely because he does not again stop and look for something that can not be seen and listen for something which can not be heard.

2. ——— *Findings on Former Trial—Not Conclusive on Subsequent Trial.* A finding at a former trial that a crossing bell was rung can not impair the force of a contrary finding upon a subsequent trial at which other evidence upon the subject was introduced.

Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion filed October 11, 1913. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *F. Dumont Smith,* of Hutchinson, for the appellant.

*W. E. Broadie,* and *T. S. Haun,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

WEST, J.: Colony avenue in the city of Kinsley runs north and south, and crosses four tracks of the defendant which run northeast and southwest. On the day of the injury the plaintiff, a man fifty-five years old, living nine miles in the country, familiar with the crossing, came south on Colony avenue driving a span of mules hitched to a wagon in which were some barley, a gasoline stove and some plowshares. A gentle wind was blowing from the south. The mules were fast walkers. Several elevators were located along the north track. Eighty-eight feet therefrom was the main track. Thirty-six feet from the main track was the branch-line track on which passenger trains came over the Hutchinson-Kinsley branch. Between these main and branch-line tracks was the house track, on which was a string of box cars extending forty-five feet into Colony avenue and back as far as the coal chutes east thereof. An automatic signal bell was located on the street line west of Colony avenue, which when in order would ring when a train coming west reached a point twelve hundred feet east of the bell, and continue to ring until the train had passed. The main track was clear, but the box cars on the house track obstructed the view of a train from the east on the branch-line track. Just north of the main track the plaintiff stopped, looked and listened, and, seeing no train, proceeded, and just as his mules came past the box cars on the house track the wagon was struck by the engine of a passenger train coming from the east on the branch-line track, and the plaintiff was injured. He testified:

"And they went along till they came to that car that stood out, and went around it, and as they went by there they sprang and I knew something scared them. I looked to the east and just as I got by the car and could see, there was the engine. Well, the mules

jumped and I remember of jumping up to urge them on. . . . When I got around that they was on the track. When I got around there that instant they was on the track and their minds was made up to go across."

Before that he testified:

"After I got across the first switch track there was a line of cars stood out on the other switch track, out into the road way, clear down to the coal chute. You could not see anything beyond. . . . There was nothing on the main line track. I could see far down both ways on the main line track. Seeing that car there in front of me I pulled up my mules. . . . I listened for signals and trains when I stopped there."

The jury found among other things that the crossing bell was not ringing when the plaintiff stopped, looked and listened, nor was the engine bell ringing; that the whistle did not blow after he crossed the north track; that the train was running twenty-four miles an hour from the time it passed the coal chute until it struck the plaintiff; that he traveled approximately sixty feet from the time he stopped, looked and listened until he was struck; that on account of the box cars and other obstructions he could not have seen a train approaching from the east on the south track at any time after he reached Colony avenue until he passed the box cars on the third track; that he could have seen it had it not been for the box cars on the third track; that the injury was caused by the gross negligence of the defendant and that the plaintiff was guilty of no negligent acts or omissions contributing to his injury; that he did not stop to look and listen after he had crossed the main track.

The defendant urges that it was the plaintiff's plain duty to stop again before reaching the south track and that his failure to do so bars his recovery as a matter of law. It is urged that this case can not be affirmed without overruling *Railroad Co. v. Jenkins,* 74 Kan. 487, 87 Pac. 702. The facts are different. There the

main track was approached through a passage way twenty feet wide between strings of box cars left on a sidetrack twenty-one and a half feet distant from the main track. The plaintiff last looked for a train when he was one hundred and twenty to one hundred and sixty feet from the sidetrack. He stood in the wagon over the rear axle about eighteen feet from his horses' heads, and the jury expressly found that he could have seen the danger of a collision had he stopped to look before driving on the main track and that he could have avoided the collision had he stopped to look and listen, but he did not do so. It was said in the opinion that the findings showed that if the plaintiff had stood in the forward part of his wagon he would have seen the train and avoided the collision. Here the plaintiff was in the proper part of his wagon and had but sixty feet to go after he had stopped, looked and listened until reaching the south track, and the jury expressly found that he could not see the train on account of the obstruction. They found that no bell was rung, and hence he could not have heard one however much he may have listened. They found that the south track was thirty-six feet from the main track, and having stopped north of the latter where the view up and down the main track was clear, the only sensible conclusion is that he stopped there to observe the condition of the crossing with reference to the last two tracks. Having, according to his testimony, seen or heard nothing to indicate an approaching train, it can not be said as a matter of law that it was negligence for him to proceed. There being no chance to see a train on the south track on account of the box cars on the house track, and there being no signal or warning of any kind, it can not be said that he was under obligation to stop and look for something he could not see and listen for something he could not hear. Of suc-

cessive parallel tracks it was said in the Jenkins case
(74 Kan. 487, 87 Pac. 702) :

"Peril succeeds peril until all are crossed, and caution
must be exercised in the presence of each one.   To look
and listen once for all is not enough if there be oppor-
tunity to make further observations as the journey
proceeds." (p. 488.)

This was apt language in view of the facts and find-
ings in that case to the effect that having once looked
the driver paid no further attention and did not even
occupy the part of his wagon from which he might
have easily seen the danger.   Whatever the circum-
stances were we are compelled to hold that the findings
had evidence to support them, and the case must be
considered as if the ultimate facts were settled by the
findings.   These do not show that the plaintiff was un-
der a legal obligation to stop again and look and listen.
At most it was for the jury to determine whether or
not he acted in a reasonably prudent manner and their
conclusion is binding on us.

The rules of law applicable to injuries at crossings
are thoroughly discussed and clearly set forth in *Rail-
road Co. v. Willey,* 60 Kan. 819, 58 Pac. 472; *Johnson v.
Railroad Co.,* 80 Kan. 456, 103 Pac. 90; *Beech v. Rail-
way Co.,* 85 Kan. 90, 116 Pac. 213; *Jones v. Railway
Co.,* 85 Kan. 313, 116 Pac. 496; *Coleman v. Railway
Co.,* 87 Kan. 190, 123 Pac. 756; *Fike v. Railway Co.,*
ante, p. 409, 133 Pac. 871, and cases cited.

The fact that a jury on a former trial found that the
crossing bell was ringing can not be used to impair the
force of a contrary finding upon another trial at which
other evidence upon the subject was introduced.   The
cause was remanded before on account of inconsistent
findings.   (*Edwards v. Railway Co.,* 86 Kan. 257, 119
Pac. 872.)   The present record shows no inconsistency,
and under the settled doctrine as to contributory neg-
ligence the judgment must, in view of the findings and
general verdict, be affirmed.