No. 24,158.

GERTRUDE HOLLAND, *Appellee*, v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. RAILROAD CROSSING—*Collision Between Automobile and Switch Engine—Contributory Negligence Question for Jury.* Plaintiff was injured in a collision which occurred between a Ford car in which she was riding and a switch engine of defendant at a railway crossing in the nighttime. The Ford was traveling at the rate of 5 or 6 miles per hour; the switch engine at a rate between 4 and 5 miles. The Ford was picked up on the pilot of the switch engine, with its occupants, and carried 300 feet. Plaintiff and the driver of the automobile testified that there was no headlight on the switch engine and that no signal was sounded for the crossing. The engineer, fireman and conductor who were in the cab of the switch engine testified to the contrary. The jury found that there was no headlight and that no signal

39—112 KAN.

was given; that both plaintiff and her escort looked and listened for an approaching train; that a street light was not burning brightly enough to enable them to discover the switch engine; that the noise of their own car and the high wind interfered with their hearing the switch engine, and that if plaintiff had stopped before crossing the tracks, by reason of the darkness the noise of the automobile and the high wind, she could not have seen nor heard the approaching engine. *Held,* in view of all the circumstances, the case was one for the jury to determine whether plaintiff exercised the care for her safety that a reasonably prudent person would have exercised under the same conditions. (*McClain v. Railway Co.,* 89 Kan. 24, 130 Pac. 646.)

2. SAME—*Hearsay Evidence—When Competent.* Shortly after the collision the train conductor went to the home of one McIntosh who lived near by and got him to go for a physician. McIntosh's deposition was taken by the defendant. On cross-examination he was asked what was said by the trainmen with reference to the headlight. He answered that the trainman who came to his house said: "We had a damn poor headlight; we had been having trouble with this light ever since we left Nevada." At the trial the conductor was a witness for defendant and on cross-examination he denied making the statement testified to by McIntosh. The defendant then offered the deposition but objected to the question with reference to what the trainmen said after the accident, on the ground that it was no part of the *res gestæ* and was hearsay. *Held,* that the question became relevant and competent in the course of the trial for the purpose of impeaching the testimony of the conductor.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed January 6, 1923. Affirmed.

*W. P. Waggener, James M. Challis, O. P. May,* all of Atchison, and *W. F. Jackson,* of Fort Scott, for the appellant.

*B. Hudson, Douglas Hudson, James G. Sheppard,* and *Charles F. Newman,* all of Fort Scott, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Gertrude Holland brought suit to recover for injuries resulting from a collision between a Ford car in which she was riding and a switch engine of appellant. The trial resulted in a verdict in her favor for $4,000. The railroad company appeals.

The accident happened in the town of Liberal, Barton county, Missouri, on December 28, 1920, at about 8:30 o'clock in the evening. Defendant's railroad runs north and south through the town. A highway, which is the main street of the town, runs east and west, and crosses the railway tracks 60 or 80 feet north of the depot which is on the east side of the tracks. The Ford car was

driven by Thomas E. Bell, a young man about the age of the plaintiff. The car in which they were riding belonged to the young man's father. The young people had taken rides in the car as often as once every two weeks for a year, and during that time they had been keeping company. On the evening in question they were returning from a picture show, and were driving west. From a point 200 feet east of the crossing there was an unobstructed view of the track for a mile. There was a street light which hung over the center of the street about 60 or 70 feet east of the crossing, and this light illuminated the north end of the depot 60 or 80 feet to the south.

Plaintiff's testimony showed that just before the Ford reached the crossing it was moving at from five to six miles per hour; that a light freight engine was approaching from the north with no cars or caboose attached and moving at a speed of between four and five miles per hour. The Ford car was not turned over but was picked up on the pilot and with its occupants carried 300 feet south of the crossing. The rear right wheel of the Ford car was broken. The plaintiff and her escort testified that they were keeping a lookout for trains when they approached the crossing, saw no headlight, and would have seen it had there been one. They heard no whistle sounded or signal given, and both testified that there was no headlight on the engine. When the engine was stopped a man in the engine got out and removed the occupants of the car, and with some assistance plaintiff walked back to the depot, and from there, with assistance, she walked to the home of A. B. Mc-Intosh, about 300 yards, where a physician was called.

The cab of the engine was occupied by the engineer, who was on the right-hand side of the engine, the fireman and conductor Roup. They all testified that the headlight of the engine was burning and that the usual signal was given for the crossing, and that they were running very slowly. They also testified that on each side of the engine there was a marker consisting of a red light surrounded by a wire screen. Bell testified that he looked first at a point 200 feet east of the crossing; again about 20 feet from the track; looked in both directions; looked to the north last. Within 12 or 15 feet from the crossing he looked for the last time; that the first time he knew of a train being anywhere around "it had hit the car and was shoving us down the track." The jury made the following findings of fact:

"1. Did the street light at the crossing interfere with the plaintiff seeing the headlight on the locomotive? Answer: No.

"2. Did the noise of the automobile engine and the high wind interfere with the plaintiff hearing the approaching locomotive? Answer: Yes.

"3. Was the street light burning brightly enough to outline an approaching locomotive? Answer: No.

"4. Did the plaintiff look for trains before attempting to cross the track? Answer: Yes.

5. If you answer the last question 'Yes,' then state why you did not stop? Answer: Did not see or hear train.

"6. For what purpose were the plaintiff and her companion riding in the automobile? A. Going home.

"7. If you find the plaintiff listened for an approaching train before going upon the crossing, then state why she did not hear it? Answer: Because of high wind and noise of engine.

"8. If plaintiff had stopped before going upon the track and looked and listened for an approaching train could she have heard it? Or seen it? Answer: No.

"9. If you answer the last preceding question 'No,' then state why not? Answer: Because of no headlight or signal given.

"10. If you find the issues here in favor of the plaintiff, then state what negligence, if any, you find against the defendant? Answer: No lights or signals given."

The defendant's motion to set aside findings Nos. 8 and 9 as contrary to the evidence was overruled; also a motion for judgment in favor of defendant and a motion for a new trial were overruled.

At the time of the trial, a little more than a year after the accident, plaintiff appeared to be without any bruises or scratches. The physician who was called to the McIntosh home after the accident testified that the plaintiff had a slight abrasion over the right eye, which was puffed and swollen, and a bruise on her shin the size of one's hand; she complained of severe pains in her abdomen; he saw her the next day when she complained of the same pains. He testified that at the time of the trial there were no discolorations on her body.

Her mother testified, in substance, that prior to the accident the plaintiff was in good health; was attending business college at Pittsburg; that when she returned home after the accident there was a bruise above the eye; her hip and shin were injured. Plaintiff became very sick at her stomach and was placed in bed, where she remained for two weeks; for three or four months she wasn't able to be up all day. After the injury she kept complaining, and continued up to the time of the trial.

A physician who had examined her shortly before the trial

Holland v. Railroad Co.

testified to a small scar on her hip, on her knee and over her eye. He made an X-ray examination, which did not show anything. He thought the injuries she sustained might be more or less permanent.

One of the main contentions is, that conceding the truth of the plaintiff's evidence to the effect that there was no headlight on this engine and no signal given, nevertheless her own evidence established that she was guilty of contributory negligence. It is argued that this is true even without the imputation of the negligence of her escort. The cases relied on are those which hold that it is not enough for a traveller to look where an approaching train cannot be seen or to listen when it cannot be heard. (*Railroad Co. v. Holland,* 60 Kan. 209, 56 Pac. 6; *Railroad Co. v. Entsminger,* 76 Kan. 746, 92 Pac. 1095.) These and other cases, which hold that there is a presumption that a person failed to exercise due care to avoid injury, where the undisputed evidence shows that if he had looked and listened before driving upon the crossing, he must have seen and heard a train approaching. Plaintiff and her escort were travelling faster than the engine, and if they had looked just before going upon the crossing it is insisted they must have seen and heard the approaching engine which was necessarily within a few feet from them. In *Gaffney v. Railway Co.,* 107 Kan. 486, 192 Pac. 736, it was held that one who could see and learn of the danger if he looked is held to have knowledge of the danger even if he does not look.

The plaintiff, on cross-examination, was asked, if it were not a fact that the street light illuminated the north end of the depot 150 feet away and answered in the affirmative. This did not bind her to the fact that the depot was that far away; especially in view of the evidence on both sides to the effect that it was 60 or 80 feet away. We do not believe her answer can be considered as a "genuine admission."

It was the contention below, that the plaintiff and her escort were engaged in a joint enterprise, and complaint is made because the court submitted that question to the jury in place of deciding it as a question of law. In *Bush v. Railroad Co.,* 62 Kan. 709, 64 Pac. (not cited in the brief), plaintiff, a young woman, was invited by a young man to take a buggy ride. They drove over a railway crossing in the nighttime and were struck by a train, killing the horse, demolishing the buggy and seriously injuring the plaintiff.

It was held that because they were out riding for the mutual pleasure of both, they were engaged in a joint enterprise; and because they had equal opportunity to see and ability to appreciate the danger, and plaintiff was in fact looking out for herself but made no effort to avoid the danger, she was chargeable with contributory negligence. The ruling of the trial court sustaining a demurrer to the evidence was affirmed.

We think it cannot be said that the court erred in refusing to sustain a demurrer, in view of the fact that there was evidence tending to show that there was no headlight on the engine; no signal for the crossing; that the wind was blowing hard from the southwest; the precautions taken by the driver and by the plaintiff to ascertain whether the crossing was clear; the noise made by their own car; some evidence to the effect that the switch engine was coasting without making much noise. Under all the facts and circumstances of the case, it was for the jury to determine whether she exercised the care for her safety that a reasonably prudent person would have exercised under the same conditions. (*McClain v. Railway Co.*, 89 Kan. 24, 130 Pac. 646, and authorities cited in the opinion.) In that case the principal facts which the court had in view were that the gates were open, the watchman was absent, and there was noise of a passing freight train and a strong wind blowing. On the theory of the demurrer, in the present case, there was an absence of headlights, and no signals. A traveller in approaching a railway crossing in the darkness naturally expects that an approaching train will have a headlight, which can generally be seen at night more readily than an approaching train in the daytime. It was not error to overrule the demurrer nor to refuse to render judgment on the findings.

The plaintiff's case rested to a great extent upon the contention that there was no headlight on this engine. The three employees of defendant, the engineer, fireman and conductor testified that it was fully equipped with an electric headlight which was lighted at the time of the accident. As defendant contends, any evidence, though the slightest, tending to corroborate plaintiff's claim that there was no headlight became of vital importance. After the collision, the conductor Roup went to the house of A. B. McIntosh, several hundred feet distant, and requested him to send for a physician. On the cross-examination of Roup during the trial he denied making to McIntosh the following statement:

Holland v. Railroad Co.

"We run into a couple down there with a car. We had a damn poor headlight. We have been having trouble with that light ever since we left Nevada."

The defendant next offered in evidence the deposition of McIntosh, taken at Liberal, Mo. On cross-examination by the attorney for plaintiff he was asked:

"Q.. Do you remember when you went down there to this engine with the trainmen that you have referred to, what, if anything, was said by the trainmen with reference to the headlight?

"By Mr. Challis: We object—no part of the *res gestœ* and hearsay.

"The Court: Overruled.

"A. Well, the trainman, when he came up on the porch and come into the house, he said, 'We run into a couple down here in a car,' and he said, 'They didn't see the car,' and he said, 'We had a damn poor headlight.' That is the expression he give me and he said, 'We have been having trouble with this light ever since we left Nevada.'"

The contention is that the objection to the testimony was well taken; that it called for a statement which was not part of the *res gestœ* and was hearsay. It often happens that a question, apparently incompetent at the time the deposition was taken, becomes relevant and competent during the trial. It cannot be doubted that if McIntosh had been in attendance at the trial he could have been called and asked, for the purpose of impeaching conductor Roup, the same question which the court admitted in the form of a deposition. There was no error in overruling the objection.

As a question of law, plaintiff and her escort were engaged in a joint enterprise. (*Bush v. Railroad Co.*, supra.) The error in submitting that question to the jury was not prejudicial, since the case was one for the jury on the question of contributory negligence.

There was some inconsistency in the findings, but not sufficient to justify the granting of a new trial.

The verdict for $4,000 seems, at least, to border on the excessive in view of the comparatively slight injuries which the plaintiff sustained. It was approved by the trial court and we are unable to see that it is so far excessive as to justify the court in ordering its reduction or in directing a new trial.

The judgment is affirmed.

PORTER, J. (dissenting): The automobile was moving faster

than the switch engine and the view of the crossing was unobstructed. The street light under which these young people passed as they approached the crossing was bright enough to light up the end of the depot seventy feet south so that the finding of the jury that it was not bright enough to light up the crossing seventy feet to the west should have been set aside, and also the finding that if plaintiff had stopped before going on the track and looked and listened she could have heard or seen the approaching engine.

In a similar case, cited in the opinion, where a young couple were riding in a horse-drawn vehicle in the nighttime and approached a railway crossing, it was held that they were engaged in a joint enterprise, and because the young woman was in fact looking out for herself, but made no effort to avoid the danger, she was chargeable with contributory negligence. (*Bush v. Railroad Co.*, 62 Kan. 709, 64 Pac. 624.) In the present case the young people were more interested in themselves than in their surroundings. I think the decision is in conflict with a half dozen crossing cases recently decided.