H. M. Shirley, Respondent, v. Kansas City Southern Railway Company, Appellant.*

Kansas City Court of Appeals. June 27, 1927.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 639, p. 746, n. 16; 4CJ, section 2830, p. 844, n. 67; Damages, 17CJ, section 436, p. 1106, n. 58; Evidence, 22CJ, section 545, p. 454, n. 72; Railroads, 33Cyc, p. 1019, n. 86; p. 1084, n. 8; p. 1116, n. 90; Trial, 38Cyc, p. 1506, n. 70; p. 1595, n. 5; Witnesses, 40Cyc, p. 2687, n. 93.

*Sylvan Bruner* and *Mosman, Rogers & Buzard* for respondent.

*Cyrus Crane, Hugh E. Martin* and *W. M. Anderson* for appellant.

ARNOLD, J.—This is a steam railway crossing case in which plaintiff seeks damages for injury to his person and property in a collision between a locomotive operated by defendant and an automobile driven by plaintiff. Defendant is a corporation engaged in interstate operations and, as a common carrier, operates through the city of Pittsburg, Crawford county, Kansas. Plaintiff is a resident of said city.

The collision occurred within the limits of the city of Pittsburg on September 11, 1923, between 9:30 and 10:00 A. M., at a point where the tracks of defendant intersect Fourth street in said city. This street runs east and west and is crossed by defendant's track at approximately right angles. At its intersection with said track Fourth street is paved and is thirty and five-tenths feet in width from curb to curb. On the north side of the north curb is a parking space seventeen and seven-tenths feet in width and north of this is a sidewalk five and three-tenths feet wide. A track of the Atchison, Topeka & Santa Fe Railway Company crosses Fourth street a few feet east of defendant's tracks. At the north curb of Fourth street defendant's track is twenty-three feet from the Santa Fe track from center to center, and at the south curb the tracks are eighteen and seven-tenths feet from center to center. There is no sidewalk nor parking on the south side of Fourth street at the point of the railroad crossing. Fourth street is one of the main streets in said city and is much traveled. The shops of defendant lie northward of Fourth street some distance.

At about 9:20 A. M. of September 11, 1923, a Santa Fe train consisting of an engine, tender and two passenger coaches, a baggage car and some freight cars crossed Fourth street from the south and stopped north of Fourth street on a track known as the Santa Fe Southern connection. After this train stopped the baggage car and two passenger coaches were left standing on the Santa Fe connection directly east of defendant's track. The engine and freight equipment were disconnected and the end of the rear Santa Fe coach was permitted to stand projecting half way across the paved or traveled portion of Fourth street. The evidence is somewhat conflicting as to the exact location of the rear end of the rear coach.

The train of defendant involved in the collision, consisting of a locomotive and tender pulling three loaded cars of coal, came down from defendant's north yards in Pittsburg and had been cut off from a train three blocks north of Fourth street. About 130 feet north of Fourth street, along defendant's track, is a railroad crossing where

the main line track of the Santa Fe crosses the main line track of defendant. When defendant's train, southbound, arrived at this crossing the evidence shows it was brought to a stop and the whistle was blown signifying an intention to proceed southward on the main line, and the train was started. The engine being headed south, the engineer was on the west side and the fireman on the east of the engine cab. The fireman was ringing or attempting to ring the bell with his hand, although there was an automatic ringer on the engine. Plaintiff's testimony tends to show the bell was not actually ringing but was revolving on its axis, while defendant's testimony is that it was ringing.

It appears the train proceeded southward at a speed of six to eight miles per hour, and when the engine reached the center of Fourth street, the collision occurred. After defendant's train had crossed the main line crossing of the Santa Fe, the view of the fireman was obstructed to the east by the standing Santa Fe coaches. The view of the engineer was obstructed eastward along Fourth street by the engine he was driving, as well as by the said standing coaches.

An instant before the collision the automobile driven by plaintiff appeared from the east in view of the fireman. The fireman gave a stop signal to the engineer who applied the brakes and the train was stopped with the front end of the engine somewhat south of the pavement on Fourth street. The evidence shows that plaintiff lived almost a mile east of the crossing in question, was accustomed to travel along Fourth street and over the crossing for some years, and was familiar with the surroundings. On the morning in question plaintiff was driving his five-passenger touring car from the east towards the center or main business portion of the city. About 600 feet east of the crossing, he stopped and picked up one George Deuel, an engineer in the employ of defendant, and then proceeded westward on Fourth street. While he was thus traveling, the Santa Fe train pulled in and stopped as above indicated and a detached switch engine crossed Fourth street to the south before the motor car reached the crossing.

Evidence in plaintiff's behalf is that when the automobile reached a point some fifteen to twenty feet east of the Santa Fe track, and while on the north side of Fourth street, the occupants thereof looked north and south for an approaching train. Defendant's evidence is contradictory of this and is to the effect that the automobile did not stop, but proceeded westward, and that it did not stop before going upon defendant's tracks.

It appears that, upon discovering the proximity of defendant's engine approaching from the north, plaintiff attempted to avoid a collision by turning his automobile sharply to the left, or southward, but was unsuccessful. The impact carried his car southward beyond the pavement and it was badly wrecked. After the locomotive stopped

Deuel got out of the car, but it was necessary to back up the locomotive and to move the wrecked and damaged automobile before plaintiff could be extricated therefrom. Plaintiff was found to be badly injured and was taken to a hospital where he remained for several weeks before being removed to his home. His injuries were found to consist of an impacted fracture of the left hip joint, rendering the left leg shorter than its fellow and limiting the movements of the injured member, and there were other injuries and bruises. Plaintiff's testimony is that his automobile was a total wreck; that before the collision it was reasonably worth $500, and thereafter it was worth only $80.

The amended petition, upon which the cause was tried, alleges the corporate *status* of defendant, the location of the streets of the city of Pittsburg, Kansas, involved in this suit, and the relation of defendant's tracks to those of the Santa Fe Railway Company charges that on September 11, 1923, while crossing defendant's tracks, an engine operated by defendant negligently and carelessly collided with and ran into an automobile in which plaintiff was riding, injuring plaintiff and wrecking and damaging his automobile in the sum of $420. The negligence charge is as follows:

"1. The negligent and careless failure to remove or cause to be removed the train of cars standing on the tracks of the Santa Fe which obstructed plaintiff's view of defendant's track.

"2. The negligent failure to maintain a watchman or flagman under the circumstances.

"3. Negligent failure to give a signal of warning of the approach of the train to the crossing.

"4. Violation of the speed ordinance of the city of Pittsburg.

"5. Negligent failure to keep a reasonably careful and vigilant lookout.

"6. Negligent failure to have the train under such a reasonable control so as to be able to stop the same upon the first appearance of danger and that they negligently and carelessly operated the train at a negligent and careless rate of speed without keeping a vigilant and careful lookout.

"7. Negligent failure to stop the train after the appearance of plaintiff in a position of danger."

Defendant's answer consists of a general denial and specific pleas of contributory negligence, as follows:

"(a) Driving upon the track without looking.

"(b) Driving upon the track without listening for the approach of trains.

"(c) Failure to stop in a place of safety where he could ascertain by looking or listening whether a train was approaching.

"(d) Failure to look and listen.

1162

"(e) Failure to stop his automobile and alight therefrom and go to a place where he could look and see the approaching train.

"(f) Failure to stop the motor of his engine so that he could hear."

The answer also pleads the following decisions of Kansas: Rule v. R. R. Co., 107 Kans. 479; Coleman v. R. R. Co., 87 Kan. 190; Williams v. R. R. Co., 102 Kans. 268; Steffen v. Railway Co., 89 Kans. 796; Palmer v. Railway Co., 90 Kans. 57; Railway Co. v. Jenkins, 74 Kans. 487; Burzio v. Railway Co., 102 Kans. 287; Johnson v. Railway Co., 110 Kans. 378; Rathbone v. Railway Co., 113 Kans. 257; Dyerson v. R. R. Co., 74 Kans. 528; Williams v. R. R. Co., 102 Kans. 271. The reply specifically denies that plaintiff was guilty of contributory negligence; that, the laws of Kansas as pleaded in the answer are such as to adjudicate plaintiff guilty of contributory negligence; that the opinions of the Supreme Court of Kansas, as set out in the answer, constitute the laws of Kansas and a bar to plaintiff's recovery.

The reply avers that the decisions pleaded in the answer are not based upon facts similar to those herein; that the facts are that defendant's track was fourteen feet west of the Santa Fe track, parallel thereto, and that there were coaches standing on the track of the Santa Fe from a point about the center of Fourth street north a distance of about 150 feet, which completely obstructed plaintiff's view of defendant's tracks, and that plaintiff stopped his automobile at a reasonably safe distance from defendant's tracks, and reasonably close thereto, and looked and listened for the approach of a train; that at such time he was in a position where he could hear the approach of a train and timely signals of warning after so carefully looking and listening; that seeing and hearing no approaching train, he cautiously proceeded across the track and when thereupon, the automobile was struck by defendant's locomotive engine; that in approaching and attempting to cross the defendant's said track, plaintiff did everything that was reasonably necessary in the exercise of ordinary care to ascertain whether a train was approaching; but that, notwithstanding such care and because of the negligence of defendant, as alleged in the petition, plaintiff was struck and injured. Plaintiff pleads the laws of the State of Kansas in support of his cause, as set out in the following opinions of the Supreme Court of said State, as follows: Long v. Mo. Pac., 114 Kans. 40; Holman v. R. R. Co., 113 Kans. 710; Peterson v. R. R. Co., 90 Kans. 449; R. R. Co. v. Hansen, 78 Kans. 278; Railroad Co. v. Assman, 78 Kans. 424; Smith v. Railroad Co., 91 Kans. 31; Holland v. Mo. Pac., 112 Kans. 609; Bollinger v. Schaff, 113 Kans. 124; Kessler v. Davis, 111 Kans. 515.

The reply further alleges that defendant, its agents, servants and employees in charge of the train were guilty of reckless and wan-

ton disregard of the life of plaintiff and others who were approaching and about to cross the said tracks of defendant, in that defendant and its agents knew that persons were likely to cross over said crossing and knew that their view was obstructed by reason of the train standing on the tracks of the Santa Fe and the engineer in charge of defendant's train carelessly, negligently, recklessly, wantonly and in violation of the law and ordinances of the city of Pittsburg, pleaded in plaintiff's petition, operated said train at a high rate of speed in excess of six miles per hour without giving any warning signal of the approach of the train to the crossing, and operated the train on a down grade, as was known to defendant, and without the train making any noise or giving any warning of its approach, and that by reason thereof and under the laws of Kansas, as announced by the Supreme Court of said State in Railroad v. Baker, 79 Kans. 183, defendant is barred from pleading or alleging, or setting up as a defense to this suit, contributory negligence of plaintiff.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $7500. Motions for a new trial and in arrest were overruled and defendant has appealed.

It is agreed by the parties hereto that, as the collision occurred in Kansas where plaintiff resides and defendant operates its railroad and maintains extensive shops and yards in the city of Pittsburg, therein, the laws of Kansas, if properly pleaded and proved, determine the rights of the parties hereto, excepting as to questions of procedure, wherein the laws of Missouri control, the cause having been tried in this State. The main points urged by defendant in support of its appeal are that under the laws of Kansas, plaintiff was not entitled to recover and that defendant's demurrer to the evidence should have been sustained, and that the laws of Missouri construing the Kansas laws in this respect are the same as the Kansas laws. While these two points are raised in separate assignments they are so closely allied that they will be considered together.

It is the established rule in this State, in support of which no citations are needed, that for the purposes of a demurrer, only the evidence most favorable to the cause of action is to be considered by the court on review. It is insisted that the law of Kansas governing the operation of automobiles upon and over railroad crossings with which the drivers are familiar holds that it is the duty of the driver of the automobile to look for an approaching train from a place where he can see along the track upon which a train may be expected to come; that he is bound to act upon the assumption that at any moment a train may be approaching upon an otherwise unoccupied track, and he may not rely upon the fact that no signal has been given, for such affirmative precaution upon the part of the trainmen may be omitted; that it is the duty of the driver of an automobile to

listen attentively for an approaching train, while he is in a place of safety and where he may hear the noise thereof, or the signal given by the operators of the train; that if there is any noise under the driver's control which interferes with his hearing, it is his duty to still such noise and to listen attentively thereafter before attempting to cross the track; and that where the driver's view along the track upon which he may expect a train to approach is completely obstructed, it is then his duty to look after he passes the obstruction.

The testimony in plaintiff's behalf shows that from the point at which he says he stopped, looked and listened, there was nothing to obstruct his view for a distance of 150 feet north, excepting the Santa Fe coaches above referred to; and that he neither saw nor heard the approaching train. In a recent case, Gersman v. Santa Fe Ry. Co., 229 S. W. 167, our Supreme Court, in construing the Kansas law, said:

"If, on account of obstructions, the driver of an automobile, as he approaches a railroad track, cannot see along the track until his automobile is in a place where it will be struck by a passing engine or car, it is, as a matter of law, his duty to stop his automobile and see whether an engine or car is coming before driving onto the track. [Wehe v. Railroad, 97 Kans. 794, 156 Pac. 742, 743, L. R. A. 1916E, 455.]"

Also, in Woodard v. Bush, 282 Mo. 163, 220 S. W. 839, the same court said: "If the deceased's view was obstructed, then, under the Kansas rule, it was his duty to stop and see that no train was coming. Under that rule he should have even gotten out of his car if such was necessary to determine the approach of the train. This on the theory that his view was obstructed." We take it this rule applies where the driver's view is completely obstructed. Plaintiff's testimony herein would seem to support a finding by the jury that plaintiff's view was not completely obstructed excepting as regards the Santa Fe coaches, as above stated.

Defendant argues that plaintiff's testimony shows that it was fourteen feet between the nearest rails of the two tracks, and that, under the Kansas rule, he should have stopped within that fourteen feet and looked and listened, after passing the south end of the Santa Fe coaches, under the decisions in Rathbone v. Railway Co., 113 Kans. 257, 214 Pac. 109, and Wehe v. Railway Co., 97 Kan. 794, 156 Pac. 742. In the application of this rule, however, as insisted by plaintiff, there are two elements not present in the cases cited by defendant. For instance, there is the length of plaintiff's car, which the testimony shows was seven feet from the driver's seat to the front end, and from this the jury might well conclude that after passing the south end of the standing Santa Fe coaches, plaintiff's car occupied

practically all of the fourteen feet of space between the rails of the two tracks; and that, in passing south of the Santa Fe coaches, plaintiff was in the line of east travel on the south side of Fourth street. While these items are not conclusive, they are of sufficient substantiality to support the rule we shall hereinafter announce.

It would seem from a more or less casual reading of the Kansas decisions that there is a substantial conflict between them, as cited *pro* and *con* by the parties hereto. It must be conceded that the application of a rule must be modified by the circumstances surrounding each case. This point is well illustrated in the opinion of the Supreme Court of Kansas in the case of Edwards v. Santa Fe Railway Co., 90 Kans. 499, 135 Pac. 562. In that case the defendant urged "that it was the plaintiff's plain duty to stop again before reaching the south track, and that his failure to do so bars his recovery as a matter of law. It is urged that this case cannot be affirmed without overruling Railroad v. Jenkins, 74 Kans. 487, 87 Pac. 702. The facts are different. . . . They (the jury) found that no bell was rung, and hence he could not have heard one, however much he may have listened. They found that the south track was thirty-six feet from the main track; and, having stopped north of the latter, where the view up and down the main track was clear, the only sensible conclusion is that he stopped there to observe the condition of the crossing with reference to the last two tracks. Having, according to his testimony, seen or heard nothing to indicate an approaching train, it cannot be said as a matter of law that it was negligence for him to proceed. . . . Whatever the circumstances were we are compelled to hold that the findings had evidence to support them, and the case must be considered as if the ultimate facts were settled by the findings. These do not show that the plaintiff was under a legal obligation to stop again and look and listen. At most it was for the jury to determine whether or not he acted in a reasonably prudent manner, and their conclusion is binding on us."

The case of Railway Company v. Assman, 78 Kans. 424, 96 Pac. 843, was introduced in evidence by plaintiff. The syllabus of that case reads:

"The particular acts of care and vigilance required of a traveler when about to cross a railroad track at a public crossing will depend in a large measure upon the facts connected with the particular crossing. If he exercises ordinary care and vigilance to avoid injury he will not be barred of recovery on account of contributory negligence."

We find no conflict in the Kansas opinions and hold there was no error in the refusal of the trial court to sustain the demurrer. This holding is not in conflict with the opinions of the Supreme Court of Missouri in construing the Kansas laws. A further discussion of this

point would seem to be unprofitable. The question as to whether or not plaintiff did all that was required of him under the law was for the jury. Certainly we cannot say plaintiff was guilty of contributory negligence as a matter of law under the facts in evidence and the law as above stated.

It is urged the court erred in giving plaintiff's instruction P-1. The basis of this objection is that the instruction was misleading, that it assumes as proved a controverted issue; that it is broader than the pleadings and contains direct statements of fact and conclusions of law upon controverted matters in issue. Appellant argues that it would seem the case was intended to be submitted upon the violation of the speed ordinance of Pittsburg, Kansas, and upon the failure of defendant to warn; that the instruction permitted the jury to find against defendant upon other grounds; that the different clauses in the instruction are not connected by the use of the conjunctive "and" or by any other word; that the jury might well have been misled in puzzle of these clauses; that the issues were sharply joined as to the ringing of the bell, the giving of a warning as to the approach of the train, the position of the Santa Fe train, and as to whether or not plaintiff's negligence was a bar to his recovery; that the answer sets up as a defense plaintiff's negligence. It is urged the instruction does not require a finding of fact on these items.

The instruction complained of is plaintiff's main instruction, intended to cover the whole case and directs a verdict. We need not set it out in full here. We have carefully read it and must conclude it requires a finding of all controverted issues and that it is not broader than the pleadings and evidence. It is not necessary that the conjunctive "and" or any other word be used between the various clauses of the instruction. Its requirements are rendered plain by the use of the semicolon. The instruction begins as follows:

"The jury are instructed that if you find from the evidence . . . that at the time and place in question 4th street, mentioned in evidence was a public street and highway in Pittsburg, Kansas; that the railroad tracks of the defendant . . . cross said 4th street . . . that at said time there was upon the railroad tracks of the Santa Fe Railroad Company a train of cars standing. . . ."

Thus the various necessary elements of the case are required to be found by the jury; and, finally, "that as the sole and direct result of the negligence and carelessness, if any, of the defendant in failing to sound any signal of warning of the approach of said engine and cars to said crossing, if it did so fail to give such warning, and the negligence, if any, of the defendant, if any, in operating said engine and cars at a rate of speed in excess of six miles per hour, if it did so operate said train, the plaintiff's automobile was struck as he was upon or going upon said railroad tracks and plaintiff's automobile was

damaged and plaintiff was injured, then your verdict must be for the plaintiff and against the defendant." We hold the instruction proper.

It is charged the court erred in refusing to permit defendant to prove by plaintiff that at the time of the accident plaintiff did not know the provisions of the speed ordinance of Pittsburg, Kansas, introduced in evidence; and to prove by plaintiff that he did not rely upon any provision of said ordinance in regard to the speed of the train. It is argued that as there was a plea of contributory negligence in the case and plaintiff pleaded, as one of his causes of action, a violation of the speed ordinance, it was proper to show plaintiff did not rely upon a violation of said ordinance. The court sustained an objection to the introduction of said evidence on the ground of immateriality.

The case of Long v. Railway Co., 114 Kans. 40, 216 Pac. 1079, decided this point against defendant's contention in the following language:

"The ordinance was passed for the government of the defendant in its relations to the public, whether that public consisted of residents of Kansas, Missouri, or any other State. Inhabitants of a city are presumed to know the ordinances of that city; but this presumption arises where any person is affected by the ordinances, whether an inhabitant of the city or not. A nonresident cannot plead ignorance of an ordinance any more than a resident of a city can. . . . To show negligence on the part of a railroad, it is not necessary that the plaintiff's knowledge of an ordinance governing the speed of trains in a city be established where he is injured in a collision with a train running at a rate of speed in excess of that permitted by the ordinance." [See, also, Henderson v. Railway Co., 284 S. W. 788.]

Complaint is also made that the trial court erred in permitting counsel for plaintiff to make improper remarks in his argument with the intent to influence the jury. It appears in this connection that George Deuel who testified for plaintiff was in the employ of defendant at the time of the accident and trial, and he so testified; he also testified as to the location of the Santa Fe train and his failure to hear any warning signal. In rebuttal, he was used by plaintiff in an effort to impeach the evidence of defendant's foreman and witness Deems. Plaintiff's counsel, among other things, said in his argument: "My God! What do you think will happen to Deuel when he gets back to Pittsburg?" Objection was made on the ground that the remark was improper but the objection was overruled. Defendant urges this ruling as a ground for reversal. Further, it is charged that in the course of the argument, the following occurred:

"MR. ROGERS: We did not bring this suit in Kansas because the defendant is a Missouri corporation, and they would have removed

the case to the Federal court and no poor man can receive a fair trial in the Federal court.

"MR. MARTIN: We object to that argument as improper and made to prejudice the jury against this defendant.

"THE COURT: Gentlemen, the jury will understand that a citizen under the laws is presumed to have a fair trial in every court."

To this ruling of the court the defendant saves its exceptions and now urges this action of the court as grounds for reversal. The entire arguments of counsel are not preserved in the bill of exceptions and only the part above quoted is presented in defendant's briefs. The observation made by the court that "the jury will understand that a citizen, under the law, is presumed to have a fair trial in every court," must be considered tantamount to a ruling in favor of defendant on its objection; and, so far as shown by the record and briefs, the court was not asked to rebuke counsel. The court did all it was asked to do, and may not be convicted of error in not going further. We shall not disturb the judgment for the reason suggested.

It is charged the court erred in permitting the witness Deuel to testify to a conversation he had with defendant's witness Deems, some time after the accident. We think there is no merit in this contention. The record shows that when the witness was asked concerning the conversation, counsel for defendant objected because the conversation was too remote for the accident to be admissible. The following colloquoy then took place between the court and defendant's counsel:

"THE COURT: The purpose of it is to impeach the witness.

"MR. MARTIN: I know it.

"THE COURT: And the ground for the impeachment was laid.

"MR. MARTIN: I understand.

"THE COURT: And it is an elementary rule; is there any particular reason why the rule should not apply to this case?

"MR. MARTIN: I don't think he should introduce that sort of evidence by cross-examination.

"THE COURT: Objection overruled."

The conversation was not a part of the *res gestae,* but was proper on rebuttal. There was no error in this respect.

It is urged the court erred in refusing defendant's instruction D-12 and D-16, but counsel fail to state wherein the error occurs and we are not warranted in considering the objection.

Finally, it is urged the verdict is excessive, but we are not impressed with the merits of this contention. There was evidence showing the damage to the automobile was $420, and $200 expended for medical service, thus leaving $6880 as personal damages. The evidence shows the injured leg is shorter than its fellow and that the condition is permanent; that his injuries affect plaintiff's ability to

perform his duties; that pain in the injured leg interfered with his sleep. Plaintiff's physician testified that when he first examined him at the hospital immediately after the injury he found coal dust and gravel ground into the flesh. The skin was rubbed off the back of his leg and the front of the thigh and leg; he had an impacted fracture of the hip bone; the hip bone was pushed into the pelvic bones; he became lame and the leg was more or less stiff and its motions restricted. Plaintiff testified he believed these conditions would be permanent. Under the showing thus made, we are not warranted in declaring the verdict excessive.

Finding no reversible error in the record, the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.